## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **LADAVIOUS DASHAWN MCNAIR** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **FILE NO.:_____** |
| **vs.** | ) | |
| | ) | **Jury Trial Demand** |
| **CITY OF ATLANTA, GEORGIA,** | ) | |
| **a municipal corporation of the State of** | ) | |
| **Georgia, CHIEF DARIN SCHIERBAUM,** | ) | |
| **in his official and individual capacity, and** | ) | |
| **ABDUL R. MUSTAPHA, in his official** | ) | |
| **and individual capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff Ladavious Dashawn McNair (hereinafter "Plaintiff" or "Mr. McNair"), by and through his undersigned counsel, and hereby file this COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL arising out of Defendants' malicious prosecution, police misconduct, and civil rights violation. In support of this Complaint, Plaintiff shows this Honorable Court as follows:

## INTRODUCTION

1. Plaintiff bring this civil action seeking damages pursuant to 42 U.S.C. §§

1

1983 and 1988 for Defendants' unlawful, malicious violations of Plaintiff's federal rights as guaranteed by the First, Fourth and Fourteenth Amendments of the United States Constitution as well as violations of Georgia law.

## THE PARTIES

2.  Plaintiff Ladavious Dashawn McNair is a resident and citizen of the State of Georgia (hereinafter "Plaintiff" or "McNair").

3.  Plaintiff resides in the Northern District of Georgia.

4.  Defendant City of Atlanta (the "City") is a municipal corporation and Political subdivision of the State of Georgia and exercises its police powers through the Atlanta Police Department ("APD"). The City may be served with the Complaint by service upon Mayor Andre Dickens at 55 Trinity Avenue SW, Atlanta, Georgia 30303.

5.  Plaintiff provided timely ante litem notice of his claims to the City on or about November 14, 2024. The City of Atlanta failed to adequately respond in writing or otherwise to the Notice.

6.  Attached hereto as **"Exhibit A"** is the ante litem notice provided to the City of Atlanta.

7.  Attached hereto as **"Exhibit B"** is proof of receipt by the City of Atlanta of the ante litem notice.

8.  At all times material hereto, Darin Schierbaum was the Chief of Police for the City of Atlanta's Police Department and was acting in his capacity as the final policymaker for the City with regard to its performance of police functions. Upon information and belief, Chief Schierbaum is currently the Chief of Police of the City of Atlanta Police Department. When service is made upon Chief Schierbaum as required by law, he will be subject to the jurisdiction of this Court.

9.  At all times material hereto, Defendant Abdul R. Mustapha ("Defendant Mustapha" or "Mustapha") was a law enforcement officer employed by the City of Atlanta and was acting under color of state law within the scope of his duties as such, Defendant Mustapha is being sued in his official and individual capacity. Defendant Mustapha may be served with this Complaint by service upon him at _____ (address intentionally omitted).

## JURISDICTION AND VENUE

10. The Defendants are all citizens of the State of Georgia, and at least one of them resides within the Northern District of Georgia.

11. Upon service of the summons and complaint in a manner prescribed by law, Defendants shall be properly subject to the personal jurisdiction of the Court.

12. The subject incident occurred within the Northern District of Georgia, Atlanta, Division. Venue is therefore proper in this court.

13. The Court has subject matter jurisdiction over this action.

## FACTUAL ALLEGATIONS

14. This is an action for the malicious prosecution of a beloved, innocent, never before arrested PhD Student who was in class at the time of an alleged road rage shooting incident.

## THE INCIDENT

15. On or about Wednesday, November 1, 2023, at 4:30 p.m., Mr. McNair, a doctoral student at Clark Atlanta University who was working on completing his Doctor of Education in Educational Leadership was on the Clark Atlanta University campus at 223 James P. Brawley Drive, S.W., Atlanta, Georgia 30314, attending in-person class.

16. During his trip to class and throughout the day on November 1, 2023, Mr. McNair was texting his cousin, Omari Faulkner and fiancé Nyla Thorton; therefore, cellphone towers should have assisted law enforcement officers with locating Mr. McNair's whereabouts at the time of the alleged incident.

17. On Wednesday, November 1, 2023, at approximately 6:31 p.m., Atlanta Police Zone 3 officers responded to a report of a person shot near 603 Metropolitan Pkwy, SW.

18. On scene at the time of the incident was the only eyewitness, Mr. Albert

4

Nalls ("Mr. Nalls") who was driving the A-Tow Ford tow truck directly behind the victim and the suspect.

19. During the police investigation at the scene of the shooting, Mr. Nalls told law enforcement that the suspect was driving a silver/grey Infiniti G-35 four door sedan. Additionally, Mr. Nalls gave a description of the suspect as a slim black male wearing a dark hoodie and dark jeans standing approximately 5'10" to 6' 1" in height with a low hair cut that looked like a buzz cut.

20. On or about November 1, 2023, Defendant Mustapha executed an Affidavit of Arrest which states that due to the victim's injuries "I was unable to get information from the victim as Grady unit 776 was loading him up for transport."

21. Despite being provided a vehicle description by the only eyewitness to the shooting incident, Defendant Mustapha failed to include the vehicle description (i.e. silver Infiniti G35) in his Affidavit of Arrest.

22. Attached as **"Exhibit C"** is an affidavit of eyewitness Mr. Albert Nalls.

23. Instead of pursuing the suspect vehicle as provided by eyewitness Mr. Albert Nalls, Defendant Mustapha willfully and maliciously changed the suspect vehicle from a silver Infiniti G35 to Mr. McNair's vehicle (i.e. gray Infiniti Q50 Luxe Sport); thereby, providing a false swearing to the Honorable Todd Ashley,

Fulton County Magistrate Judge.

24. On or about November 2, 2023, Defendant Mustapha made contact with the alleged victim of the road rage incident, to wit: Mr. William Clint Latham "Latham", to obtain further information on the incident.

25. The vehicle driven by Latham, a white 2023 Chevrolet Express Van was removed by South Metro Towing and transported to Atlanta Police Property, where it was held as evidence until a search warrant could be obtained to retrieve the necessary video footage from the vehicle to aid in the investigation.

26. On or about November 3, 2023, Defendant Mustapha obtained a search warrant and administered the search warrant on the victim's vehicle.

27. Instead of having the Atlanta Police Department staff retrieve the digital evidence, Defendant Mustapha's sworn affidavit states that he permitted "the victim's manager, Mr. Russell to attempt to remotely retrieve the video footage from the company vehicle driven by the victim.

28. Defendant Mustapha's actions violated the APD chain of custody policies and procedures.

29. Defendant Mustapha assisted with *spoliation of evidence* as a result of his chain of custody violations; specifically, since A-Tow has potential liability depending on what the company vehicle footage revealed about its driver's

6

conduct.

30. On or about November 8, 2023, Defendant Mustapha's Affidavit for Arrest affirms that he "…relocated to the incident location area and checked for all the possible surveillance camera and LPR's system in the area that may or may not have captured the incident as well as the suspect's vehicle which was described by the eyewitness as a gray or silver four door sedan, possibly, an Infinity *[sic]* or a Genesis…. I reviewed the surveillance system, and I was successful in locating the initial contact of the incident between the victim's vehicle, (a white Chevrolet Express Van) and the suspect's vehicle, (a silver/gray **Infinity *[sic]* Q60**).

31. The incident as noticed occurred on 11-01-2023 between the time frame of 1819 *[sic]* and 18:22 hours as observed on surveillance camera at the intersection of Northside Dr Sw *[sic]* and Spellman Dr Sw. *[sic]* (video footage uploaded to evidence.com as evidence), a time when the Plaintiff would have been in class with numerous alibi witnesses, including but not limited to Plaintiff's professor.

32. Defendant Mustapha falsely and maliciously claimed in his Affidavit of Arrest that "Note-Person of Interest of Interest *[sic]* as it pertains to the shooter and driver of the Infinity *[sic]* Vehicle- Mr. Ladavious McNair…is the registered owner of the 2018 Infinity *[sic]* QX50 Luxe Sport."

33. Defendant Mustapha's Affidavit of Arrest states that Mustapha witnessed the suspect vehicle which was an **Infiniti Q60** initiate contact with the victim's vehicle on November 1, 2023.

34. Notwithstanding, Defendant Mustapha's sworn statement that he saw a vehicle which did not match the description of the Plaintiff's vehicle, Defendant Mustapha maliciously sought a warrant for Plaintiff's arrest, via sworn testimony to Fulton County Magistrate Judge Todd Ashley.

35. On or about November 10, 2023, Defendant Mustapha's malicious pursuit of the false arrest of Mr. McNair is detailed in the Affidavit for Arrest which states in pertinent part: "I retrieved a driver's license photo of the person of interest which I added on to a photo lineup which was administered under the microscope of my body worn camera. _Unfortunately_, the victim choose photo #6 which he claimed looked similar to that of the suspect."

36. Defendant Mustapha knew as early as approximately nine (9) days after the road rage shooting incident that the victim was unable to identify Mr. McNair as the suspect who shot him on November 1, 2023.

37. Defendant Mustapha's use of the word "Unfortunately" when the victim failed to identify Mr. McNair as the suspect involved in the November 1, 2023,

8

shooting illuminates the fact that Defendant Mustapha was determined to pin the criminal acts at issue on Mr. McNair.

38. On November 11, 2023, Defendant Mustapha made contact with Mr. McNair via his cell phone. During the call Mr. McNair informed Defendant Mustapha that he was out of town on a pre-planned trip visiting his elderly grandfather in North Carolina and would be more than happy to speak to Defendant Mustapha when he returned.

39. Defendant Mustapha agreed to permit Mr. McNair to call him back when Mr. McNair returned to Georgia from visiting his elderly grandfather.

40. Immediately upon his return to Georgia, Mr. McNair called Defendant Mustapha and during said call Defendant Mustapha stated that he was out of town, and he would get back to Mr. McNair when he returned.

41. Mr. McNair waited to hear from Defendant Mustapha and having heard nothing, assumed that whatever issue Defendant Mustapha was calling about had resolved itself.

42. Had Defendant Mustapha followed up with Mr. McNair, his investigation would have revealed that Mr. McNair was a graduate student at Clark Atlanta University working on his PhD in education and in class at the time of the alleged shooting, with numerous alibi witnesses, including but not limited to the

professor who taught class on the day at issue.

43. Attached as **"Exhibit D"** is the Affidavit for Trevor Turner, PhD, the

Professor who witnessed Mr. McNair in class on the date of the road rage incident.

44. Defendant Mustapha knew or should have known that (1) Mr. McNair is

not the registered owner of an Infiniti QX50; (2) Mr. McNair's vehicle was not

involved in an accident; (3) Mr. McNair is a disabled veteran who had never been

arrested prior to October 2, 2024; and/or (4) the only eyewitness, Albert Nalls the

A-Tow truck driver witnessed an Infiniti G-35 on the night of the incident, not an

Infiniti QX50 Luxe Sport and/or an Infiniti Q60 as alleged to have been seen on

surveillance by Defendant Mustapha.

45. On January 24, 2024, Defendant Mustapha claimed that "I received

feedback on the analysis from Sgt. Maldonado. The result showed that 100%

without a doubt that the person of interest/suspect was in the area at the time of the

incident."

46. Defendant Mustapha willfully and maliciously failed to investigate

whether or not Mr. McNair had official business in the area that would explain

why his cell phone records would indicate presence in the "area."

47. Defendant Mustapha permitted the victim to gain access to his police

report which revealed Mr. McNair's name.

48. As a result of receiving Mr. McNair's name from Defendant Mustapha, on August 16, 2024, Defendant Mustapha expressed in his Affidavit "I received a text message from the victim advising of a photo that he had retrieved on Facebook that he believes was the person that shot him. When the victim was asked how he came about the suspects *[sic]* photo on Facebook over the phone, his response was, after he read the incident report, he took notice of the person of interest name on the report which was that of Mr. Ladavious McNair."

49. On October 2, 2024, Mr. McNair was pulled over in a traffic stop by the Clayton County Police, arrested and transported to the Clayton County Jail, as a result of Defendant Mustapha's Affidavit of Arrest.

50. On October 4, 2024, Mr. McNair was picked up by Fulton County Police and transported to the Fulton County Jail at 901 Rice St NW, Atlanta, GA 30318.

51. On or about October 5, 2024, Mr. McNair was taken to his First Appearance Court hearing. During said hearing the ADA present argued that Mr. McNair was a threat to the community and as a result of said claims, Mr. McNair was denied bond.

52. On or about October 5, 2024, the victim Mr. Latham contacted Defendant Mustapha and informed him that Mr. McNair was not the person who shot him.

11

53. Defendant Mustapha maliciously ignored all attempts of the victim Mr. Latham, to get Defendant Mustapha to release Mr. McNair, including but not limited to Mr. Latham's request that Mr. McNair be granted bond.

54. On or about October 5, 2024, the road rage victim, Mr. Latham, called the Fulton County District Attorney's Office and informed the support staff that Mr. McNair is not the person who shot him; however, all attempts made by the road rage victim to secure Mr. McNair's release were ignored.

55. On October 21, 2024, a Preliminary Hearing was scheduled for October 28, 2024 at 9:00 a.m. before the Honorable Brandy Brooks, Fulton County Magistrate Judge.

56. On October 24, 2024, in an attempt to circumvent Mr. McNair's opportunity for release from his unlawful detention, the Fulton County District Attorney to wit: Fani Willis *rushed* Mr. McNair's case to a Grand Jury for Indictment using Defendant Mustapha's false sworn statements.

57. Attached as **"Exhibit E"** is the October 24, 2024, Indictment.

58. On October 28, 2024, a Demand for Speedy Trial was filed on Mr. McNair's behalf.

59. On or about October 29, 2024, the road rage victim, Mr. Latham called the office of Mr. McNair's defense attorney. During his call Mr. Latham shared

that since October 5, 2024, he has been making phone calls to Defendant Mustapha and the Fulton County District Attorney's Office and informed them that he did not believe Mr. McNair was the person who shot him on November 1, 2023; however, Mr. Latham shared that neither Defendant Mustapha nor the Fulton County District Attorney's Office staff would listen to him.

60. Attached as **"Exhibit F"** is the October 29, 2024, email from Mr. Latham.

61. On October 29, 2024, Mr. McNair's criminal case was set for a pretrial hearing on November 1, 2024, and a jury trial on November 5, 2024, before the Honorable Kimberly M. Esmond Adams, Fulton County Superior Court Judge, pursuant to the speedy trial demand filed on Mr. McNair's behalf.

62. On November 1, 2024, at 8:03 a.m., approximately one hour before the commencement of the pretrial hearing, Deputy District Attorney Gautam Rao with the Fulton County District Attorney's Office filed a Motion for Nolle Pros of the Indictment.

63. Attached as **"Exhibit G"** is the Motion for Nolle Prosequi.

64. On November 1, 2024, an Order Granting Nolle Prosequi was executed by Judge Adams.

65. Attached as **"Exhibit H"** is the Order for Nolle Prosequi.

66. Pursuant to the evidence gathered on behalf of Mr. McNair, the victim states that the entire time he has been telling Defendant Mustapha that he was not certain who shot him.

67. Defendant Mustapha's malicious prosecution is evident by the victim's statement that when he shared with Defendant Mustapha that the suspect did not look like Mr. McNair because the suspect had a low short haircut, Defendant Mustapha stated, "his hair grew back."

68. Defendant Mustapha's egregious conduct of encouraging a victim to misidentify an innocent man resulted in irreparable harm to Mr. McNair, including but not limited to post traumatic stress, nightmares directly connected to his in-custody experiences in the Fulton County Jail at **901** Rice St NW, Atlanta, GA 30318.

## <u>COUNT I</u>
### <u>The City of Atlanta is Liable for Defendant Mustapha's Improper Performance of Ministerial Duties</u>

69. Defendant City of Atlanta is liable to the Plaintiff for Defendant Mustapha's improper performance of ministerial duties.

70. A municipal corporation may be liable for neglect to perform or improper performance of ministerial duties, O.C.G.A. § 36-33-1(b).

71. A ministerial duty is commonly one that is simple, absolute, and

definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.

72. On November 1, 2023, through November 1, 2024, Defendant Mustapha neglected to perform or improperly performed certain ministerial duties with respect to Mr. McNair.

73. Defendant Mustapha's ministerial violations are set forth below.

74. APD.SOP.2010 is titled "Work Rules." "To establish a set of work rules and a general code of conduct for all employees of the Atlanta Police Department.

75. APD.SOP.2010(4.1.3) provides that "Employees will be truthful on their written and spoken words at all times."

76. APD.SOP.2010(4.1.5) provides that "Employees will uphold the Constitutions of the United States and the State of Georgia, obey all applicable federal, state, and local laws, and comply with all applicable court decisions and orders of the courts."

77. APD.SOP.3080(4.3.2)  is titled "Suspect Identification." "Identification procedures must be carefully arranged to avoid the danger or erroneous or suggestive identifications and to ensure the admission in court of accurate identification evidence."

78. Defendant Mustapha maliciously made a false swearing to Fulton

15

County Magistrate Judge Todd Ashley in the November 1, 2023, Affidavit for Arrest.

79. Defendant Mustapha violated APD.SOP.2010(4.1.3) which provides that "Employees will be truthful on their written and spoken words at all times," when Defendant Mustapha lied to Fulton County Magistrate Judge Todd Ashley about the victim's 100% identification of Mr. McNair as the suspect who shot the victim Mr. Latham.

80. The requirement that an officer "be truthful on their written and spoken words at all times," is mandatory when completing an Affidavit for Arrest.

81. The act of an officer being truthful on their written and spoken words is a ministerial act.

82. Defendant Mustapha violated APD.SOP.2010(4.1.5) which provides that "Employees will uphold the Constitutions of the United States and the State of Georgia, obey all applicable federal, state, and local laws, and comply with all applicable court decisions and orders of the courts," when he engaged in the malicious prosecution of Mr. McNair, in violation of the fourth and fourteenth amendment of the Constitution of the United States and the State of Georgia.

83. The requirement that an officer "uphold the Constitutions of the United States and the State of Georgia" is mandatory when seeking an arrest warrant for a

16

citizen.

84. The act of an officer upholding the Constitution of the United States and the State of Georgia is ministerial act.

85. Defendant Mustapha maliciously changed the suspect vehicle identified by the only eyewitness Mr. Albert Nalls.

86. Defendant Mustapha violated the suspect identification APD.SOP.3080(4.3.2) when he encouraged the victim to identify Mr. McNair (i.e. by stating to the victim "His hair grew back") after the victim shared that the hair of the suspect was significantly shorter than Mr. McNair's.

87. The requirement that an officer avoid erroneous or suggestive Identifications are mandatory when attempting to identify a suspect.

88. The act of an officer avoiding erroneous or suggestive identification of a suspect is a ministerial act.

89. Defendant Mustapha is in possession of body-worn camera video feed from the scene which shows that the eyewitness Mr. Nalls identified a suspect vehicle that did not fit the description of the vehicle registered to Mr. McNair.

90. Neither Defendant Mustapha nor any person(s) monitoring Defendant Mustapha's investigation complied with APD.SOP.2010(4.1.3), APD.SOP.2010(4.1.5), and APD.SOP.3080(4.3.2).

91. Defendant Mustapha's ministerial failures as cited herein are attributable to Defendant City of Atlanta as his employer.

92. Defendant City of Atlanta is liable for the ministerial failures.

93. Defendant City of Atlanta is liable for the ministerial failures of the person or persons who were monitoring Defendant Mustapha's investigation of the November 1, 2024, road rage shooting.

94. Due to the failure to require proper supervision of Defendant Mustapha to assure compliance with APD.SOP.2010(4.1.3), APD.SOP.2010(4.1.5), and or APD.SOP.3080(4.3.2), Mr. McNair suffered injuries and damages, including but not limited to intentional infliction of emotional distress.

95. Based on the actions described in this Count of the Complaint, Defendants City of Atlanta and Defendant Mustapha are liable for Mr. McNair's injuries, special damages recoverable by Mr. McNair, pain and suffering, including but not limited to the intentional infliction of emotional distress related to incarceration at the Fulton County Jail.

## COUNT II
### §1983 Claims against Defendant City of Atlanta for Unofficial Policy of Deliberate Indifference to Widespread Pattern and Practice of Unreasonable Search and Seizure and Inadequate Investigations

96. The Plaintiff hereby incorporates by reference the allegations

contained in paragraphs 1-95, as if fully set forth herein.

97. At all relevant times herein, Defendant Schierbaum, as the Chief of Police, was the final policymaker for the City of Atlanta with final decision-making authority with regard to training, supervision, and discipline of officers employed by the City and the Atlanta Police Department ("APD"), establishing and implementing the written policies and procedures governing APD police officers (Standard Operating Procedures), and managing, directing, and controlling the operations, disciplinary process, and administration of The Office of Professional Standards ("OPS") and the Department as a whole.

98. At all times material herein, Defendant Darin Schierbaum was the Chief of Police for the City of Atlanta. In June 2022 Mayor Andre Dickens appointed Darin Schierbaum to serve as Interim Chief of Police following the retirement of Chief Rodney Bryant. Schierbaum was appointed to be the 26thh Chief of the Atlanta Police Department by Mayor Dickens in October 2022.

99. At all material times herein, the City's SOPs require APD officers to be truthful on their written and spoken words at all times.

100. At all material times herein, the City's SOPs require APD officers to uphold the Constitutions of the United States and the State of Georgia, obey all applicable federal, state, and local laws.

19

101.   At all material times herein, the City's SOPs require APD officers to avoid the danger or erroneous or suggestive identifications of suspects.

102.   APD supervisors were required to initiate a constitutionally adequate investigation by reviewing the actions of Defendant Mustapha to determine whether Defendant Mustapha's actions were lawful, justified, and in compliance with the SOPs.

103.   OPS investigators are required to thoroughly investigate false swearing of its officers, as well as determining if Affidavit for Arrest warrants are executed in compliance with SOPs.

104.   At all times herein, Defendant Chief Schierbaum had knowledge that APD officers throughout the department were routinely engaging in false swearing before Fulton County Magistrate Judges to obtain warrants for the arrest of citizens, and that these false swearing(s) were routinely not being investigated in a meaningful or constitutionally adequate manner by APD supervisors and/or OPS investigators.

105.   Proper analysis of the APD police officers Affidavit for Warrants would reveal patterns and trends that could indicate training needs, and/or policy modifications.

106.   With its rubber-stamping and almost rote approval by the officer's

20

immediate supervisor without forwarding the fraudulent Affidavit(s) for Warrant(s) to OPS for investigation, and without any disciplinary action or remedial training imposed against the officer, prevents a proper usage and analysis of the officers false swearing(s) to potentially reveal patterns or trends that could indicate training needs, equipment upgrades, an/or policy modifications.

107.   At all material times herein, Defendant Chief Schierbaum had knowledge that APD supervisors throughout the department were routinely rubber-stamping and approving of an officer's reported false swearing(s) without consideration of objective factors to determine whether APD Officers are violating the constitutional rights of citizens.

108.   At all material times herein, Defendant Chief Schierbaum had knowledge that APD supervisors throughout the department were routinely rubber-stamping and approving of an officer's reported false swearing(s) in clear violation of the Fourth Amendment.

109.   OPS investigators are required to conduct meaningful investigations with the ultimate purpose of determining whether citizen complaints about officers swearing in an Affidavit of Arrest is lawful and in compliance with SOPs.

110.   As a matter of widespread and persistent pattern and practice, Defendant Chief Schierbaum had knowledge that OPS investigators routinely

ignored complaints of officer false swearing(s) without making any effort to develop readily available information which would definitively prove or disprove the false swearing allegation against the officer.

111.   APD failed to conduct meaningful investigations of the following complaints wherein officers were alleged to have provided false swearing(s) to Fulton County Magistrate Judges to secure arrest warrants for citizens who were suspected of criminal activity.

112.   Defendant City of Atlanta's widespread and persistent unconstitutional patterns and practices regarding officers false swearing to Fulton County Magistrate Judges to secure arrest warrants instilled in Atlanta Police Officers the belief that they were permitted to lie to Fulton County Magistrate Court Judges in their Affidavit of Arrests with impunity and without any consequences.

113.   In connection with the subject incident, Defendant Mustapha was acting pursuant to the City's official policy, custom, and/or practice of providing false swearing(s) to secure arrest warrant(s) for citizens, which was the moving force behind their brazen use of gratuitous, false swearing to secure an arrest warrant for Mr. McNair.

114.   As the direct and proximate result of the City's unconstitutional

conduct, Mr. McNair suffered injuries and damages, for which Defendant City of Atlanta is liable under §1983.

## COUNT III
## 42 U.S.C. §1983 - Violations of the 4th Amendment of the United States Constitution

115.    The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 96-114, as if fully set forth herein.

116.    Defendant Mustapha, while acting under the color of the law, violated Mr. McNair's constitutional rights by unreasonably seizing Mr. McNair, which resulted in Mr. McNair's injuries and damages.

117.    Defendant Mustapha's actions violated the constitutional rights guaranteed to Mr. McNair by the Fourth Amendment of the United States Constitution.

118.    Defendant Mustapha's actions were not taken in good-faith and were in violation of clearly established law.

119.    Defendant Mustapha's actions were unnecessary, unreasonable, unlawful, and unjustified.

120.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to,

23

medical bills, loss of income severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

121.   Because Defendant Mustapha's actions, and possibly other employees, agents, and/or representatives of the APD, were "motivated by evil motive or intent" and/or "involved a reckless or callous indifference to the federally protected rights of Mr. McNair," an award of punitive damages is appropriate to the fullest extent permitted by law. *Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT IV
## Intentional Infliction of Emotional Distress

122.   The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 115-121, as if fully set forth herein.

123.   By falsely swearing to Fulton County Magistrate Judge Todd Ashley that the suspect vehicle was the same as Mr. McNair's vehicle, by attempting to convince the victim that Mr. McNair's hair grew back when the victim shared that Mr. McNair does not match the suspect description of the person who shot the victim, by falsely claiming that the victim was 100% sure that Mr. McNair was the person who shot the victim, by allowing the victim to see a police report with Mr. McNair's name which resulted in the victim going on Facebook to select Mr.

McNair; Defendant Mustapha engage in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

124.   Defendant Mustapha acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain the emotional distress would result from his outrageous conduct of having Mr. McNair detained at the Fulton County Jail.

125.   Defendant Mustapha's actions caused Mr. McNair to suffer severe emotional distress as he was being held without a bond in the Fulton County Jail for no reason and in violation of Mr. McNair's constitutional rights.

126.   The emotional distress Mr. McNair experienced was so severe, no reasonable person could be expected to endure it.

127.   As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

128.   The actions of Defendant Mustapha against Plaintiff were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award

of punitive damages to the fullest extent permitted by law.

## COUNT V
### State Law Claims for False Imprisonment and/or False Arrest against Defendant Mustapha

129.    The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 122-128, as if fully set forth herein.

130.    Defendant Mustapha deprived Mr. McNair of his liberty by unlawfully detaining and/or arresting Mr. McNair without justification, which constitutes false imprisonment under Georgia law.

131.    Mr. McNair suffered injuries, and is entitled to recover damages as a direct and proximate result thereof.

132.    Defendants acted with intent and with actual malice to injure and are thus not entitled to official immunity and are liable for false imprisonment.

## COUNT VI
### State Law Claim for Malicious Prosecution

133.    The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 129-132, as if fully set forth herein.

134.    Defendants initiated or procured the initiation of criminal proceedings against plaintiff.

135.    Defendants caused Plaintiff to be arrested and charged with (a)

26

Aggravated Battery O.C.G.A. §16-5-24; (b) Aggravated Assault O.C.G.A. §16-5-21; (c) Aggravated Assault O.C.G.A. §16-5-21; (d) Possession of Firearm During Commission of a Felony

136.    The criminal proceedings were instituted and carried on without probable cause.

137.    Defendants knew or should have known that Plaintiff was not the person who committed the crime for which Plaintiff was arrested and charged.

138.    Defendants failed to conduct a reasonable investigation that would have revealed Plaintiff's innocence.

139.    Defendants were aware at the scene of the alleged crime that the victim was unable to identify a suspect, and that the only eyewitness identified a vehicle that is not the same as the Plaintiff's registered vehicle.

140.    Defendants acted with malice in initiating and continuing the prosecution against Plaintiff; notwithstanding the fact that the victim made several attempts to notify the Defendants that the Plaintiff did not fit the description of the suspect.

141.    Defendants' actions in arresting and prosecuting the wrong person demonstrate a reckless disregard for Plaintiff's rights and the truth.

142.    Defendants provided false information to the Fulton County

Magistrate Court, including but not limited to false claims that the victim was 100% certain that the Plaintiff was the suspect who shot the victim during the November 1, 2023, road rage incident.

143.   The criminal proceedings were terminated in Plaintiff's favor.

144.   The charges against plaintiff were dismissed on November 1, 2024, because the victim contacted defense counsel for the Plaintiff and provided documentation that the Defendants refused to listen when the victim shared on numerous occasions that he was unable to identify a suspect who shot him.

145.   As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered damages.

146.   Plaintiff suffered injuries and damages, including but not limited to loss of liberty, emotional distress, damage to reputation, lost wages, and legal expenses.

147.   Plaintiff suffered financial losses, impact on employment, and emotional/psychological effects associated with the denial of his bond and the extended detention at the Fulton County Jail; the detention facility that the U.S. Department of Justice (DOJ) found to be in violation of the civil rights of incarcerated people, by its "inhumane, violent, and hazardous conditions."

## COUNT VII
### Punitive Damages against the Individual Defendants

148.   The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 133-147, as if fully set forth herein.

149.   The individual Defendants' conduct as described herein evidences willful misconduct, malice. Fraud, wantonness, oppression, and an entire want of care which is sufficient to establish that the Individual Defendants acted with conscious indifference to the consequences of their actions.

150.   At all material times herein, the Individual Defendants acted with malice and/or reckless indifference to Mr. McNair federal rights.

151.   Plaintiff is entitled to an award of punitive damages under state and federal law.

## COUNT VIII
### Attorney's Fees

152.   Plaintiff hereby incorporate and reallege Paragraphs 148-151 of the Complaint as if fully restated herein.

153.   Plaintiff is entitled to an award of attorney's fees under § 1988 and Georgia law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands judgment against the Defendant's

for:

(a)  Process Issue as provided by law;

(b)  Compensatory damages for all past and future economic losses and
expenses incurred by the Plaintiff as a result of the Defendants'
misconduct;

(c) General damages for all past and future physical pain, mental suffering,
and emotional distress suffered by the Plaintiff;

(d) Punitive damages to the fullest extent permitted by law;

(e) Pre-judgment and post-judgment interest;

(f) Declare that the Defendants' acts, taken in their official capacities, as
alleged above, violate the First and Fourth Amendment to the United
States Constitution;

(g) Declare that the Defendants' acts, taken in their individual capacities, as
alleged above, violate the First and Fourth Amendment to the United
States Constitution;

(h) Immediately terminate Defendant Mustapha's employment relationship
with the APD, without severance;

30

(i) Order the Defendants to adopt and implement policies, training, accountability systems, practices to remedy the constitutional statutory violations described herein;

(j) Costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988;  and

(k) For such other and further specific and general relief as may become apparent from discovery as this matter matures for trial.

This 2nd day of September, 2025.

Respectfully submitted,

*/s/ Marsha W. Mignott*
Marsha W. Mignott
Georgia Bar No. 141933
Attorney for Plaintiff

**THE MIGNOTT LAW GROUP, LLC**
4945 Presidents Way
Tucker, Georgia 30084
(770) 621-5499 Office
(770) 621-5496 Fax
Lawyers@mignottlaw.com

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify that the foregoing **COMPLAINT AND DEMAND FOR JURY TRIAL** has been prepared with Times New Roman, 14-point font, one of the fonts and point selections approved by the Court in LR 5.1.

This 2<u>nd</u> day of <u>September</u>, 2025.

Respectfully submitted,

<u>*/s/ Marsha W. Mignott*</u>
Marsha W. Mignott
Georgia Bar No. 141933
Attorney for Plaintiff

**THE MIGNOTT LAW GROUP, LLC**
4945 Presidents Way
Tucker, Georgia 30084
(770) 621-5499 Office
(770) 621-5496 Fax
Lawyers@mignottlaw.com

# EXHIBIT A



# THE MIGNOTT LAW GROUP, LLC

4945 PRESIDENTS WAY
TUCKER, GEORGIA 30084
TELEPHONE: 770.621.5499
FAX: 770.621.5496
LAWYERS@MIGNOTTLAW.COM
WWW.MIGNOTTLAW.COM

November 13, 2024

_**VIA STATUTORY OVERNIGHT DELIVERY**_

The Honorable Andre Dickens
Mayor, City of Atlanta
Atlanta City Hall
55 Trinity Ave S.W.
Atlanta, Georgia 30303

Mr. Darin Schierbaum
Chief of Police
Atlanta Police Department
226 Peachtree Street SW
Atlanta, Georgia 30303

Mr. Doug Shipman
Council President, Atlanta City Council
Atlanta City Hall
55 Trinity Ave, S.W.
Second Floor East
Atlanta, Georgia 30303

## ANTE LITEM NOTICE
### CLAIM AGAINST CITY OF ATLANTA, ATLANTA POLICE DEPARTMENT and DETECTIVE ABDUL R. MUSTAPHA

**Pursuant to O.C.G.A. § 36-33-5 and O.C.G.A. § 36-11-1 the following information is being submitted.**

**Our client:** Ladavious DaShawn McNair
**Responsible Entity:** City of Atlanta, Atlanta Police Department, Detective Abdul R. Mustapha, et al.
**Time of Occurrence:** October 2, 2024, October 4, 2024, October 24, 2024, et al.
**Place of Occurrence:** Arrest in Jonesboro, Clayton County, Georgia and City of Atlanta, Fulton County, Georgia.
**Nature of Loss:** Malicious Prosecution, Intentional Infliction of Emotional Distress, False Imprisonment, et al.
**Amount of Loss:** $30,000,000.00
**Acts and Omissions which caused the loss:**
The undersigned law firm represents Mr. Ladavious DaShawn McNair (herein after "Mr. McNair"). Pursuant to O.C.G.A. § 36-33-5 and O.C.G.A. § 36-11-1, this correspondence constitutes a formal ante litem notice that Mr. McNair intends to file a

lawsuit against the City of Atlanta ("City"), the Atlanta Police Department, ("APD"), and Detective Abdul R. Mustapha ("Det. Mustapha"), whose aggregate conduct caused the malicious prosecution, false imprisonment, intentional infliction of emotional distress, et al. This is a claim for damages for malicious prosecution, intentional infliction of emotional distress, false imprisonment, and any other damages which may be proven through the discovery process and trial.

## A.    TIME, PLACE, AND EXTENT OF INJURY

On or about Wednesday, November 1, 2023 at 4:30 p.m., Mr. McNair, a doctoral student at Clark Atlanta University who is working on completing his Doctorate of Education in Educational Leadership was on the Clark Atlanta University campus at 223 James P. Brawley Drive, S.W., Atlanta, Georgia 30314. Additionally, Mr. McNair was texting his cousin, Omari Faulkner and fiancé Nyla Thorton throughout the day; therefore, cellphone towers should have assisted law enforcement officers with locating Mr. McNair's whereabouts at the time of the alleged incident. On Wednesday, November 1, 2023 at approximately 6:31 p.m. "...Atlanta Police Zone 3 officers responded to a report of a person shot near 603 Metropolitan Pkwy, SW."

On scene at the time of the incident was the only eyewitness, Mr. Albert Nalls ("Mr. Nalls") who was driving the A-Tow Ford tow truck directly behind the victim and the suspect. During the police investigation at the scene, Mr. Nalls told law enforcement that the suspect was driving a silver/grey Infiniti G-35 four door sedan. Additionally, Mr. Nalls gave a description of the suspect as a slim black male wearing a dark hoodie and dark jeans standing approximately 5'10" to 6' 1" in height with a low hair cut that looked like a buzz cut. According to the Affidavit of Arrest executed by Det. Mustapha due to the victims injuries "I was unable to get information from the victim as Grady unit 776 was loading him up for transport."

On or about November 1, 2023, Det. Mustapha's Affidavit of Arrest states "Officer Bush advised that she checked the flock camera system for the suspect vehicle and was able to identify a vehicle of interest that matched the description at the intersection of Metropolitan Pkwy and University Ave approximately 1-2 minutes after the 911 call came up." Prior to said sworn statement appearing in Det. Mustapha's Affidavit for Arrest, *no vehicle description was mentioned.* Most notably, Det. Mustapha's affidavit failed to include the vehicle description (i.e. silver Infiniti G35) provided by the only eyewitness, Mr. Nalls. Notwithstanding, Det. Mustapha's Affidavit for Arrest asserts "The vehicle of interest will be attached to this report and the owner of that vehicle shows to a Mr. Ladavious McNair...."

On or about November 2, 2023, Det. Mustapha states "I reviewed the case file pertaining to the victim. Contact would be made with the victim, Mr. William Clint Latham, to obtain further information on the incident." In addition, said Affidavit states that the victim's vehicle to wit: a white 2023 Chevrolet Express Van was removed by South Metro Towing and transported to Atlanta Police Property, where it was held as evidence till a search warrant could be obtained to retrieve the necessary video footage from the vehicle to aide in the investigation.

On or about November 3, 2023, Det. Mustapha obtained a search warrant and administered the search warrant on the victim's vehicle. Instead, of having the Atlanta Police Department staff retrieve the digital evidence, Det. Mustapha's sworn affidavit states that he permitted "the victim's manager, Mr. Russell to attempt to remotely retrieve the video footage from the vehicle for about forty-five minutes or more." Said actions violated the APD chain of custody policies and procedures. Furthermore, said affidavit states "Mr. Russell stated that he was having some technical difficulties in retrieving or seeing any video footage remotely from the surveillance camera, which is of concern because normally, once the ignition to the vehicle was activated, they were able to automatically retrieve and upload the video footage…." Mr. McNair is concerned that Det. Mustapha assisted with *spoliation of evidence* as a result of his chain of custody violations; specifically, since A-Tow has potential liability depending on what said footage revealed. Furthermore, Det. Mustapha claims in his Affidavit for Arrest that "statements provided by the victim, Mr. William, as it relates to the shooting incident coincides with that of the surveillance video footage that was provided by the A-Tow driver, Mr. Albert whom at the time, had just pulled up few seconds before behind the victim's vehicle in the right turning lane and had witnessed the shooting when it occurred. The shooting is noticeable on A-Tow surveillance system occurred exactly at 18:23:24s."

On or about November 8, 2023, Det. Mustapha's Affidavit for Arrest affirms that he "…relocated to the incident location area and checked for all the possible surveillance camera and LPR's system in the area that may or may not have captured the incident as well as the suspect's vehicle which was described by the victim as a gray or silver four door sedan, possibly, an Infinity *[sic]* or a Genesis…. I reviewed the surveillance system, and I was successful in locating the initial contact of the incident between the victim's vehicle, (a white Chevrolet Express Van) and the suspect's vehicle, (a silver/gray **Infinity** *[sic]* **Q60**). The incident as noticed occurred on 11-01-2023 between the time frame of 1819 *[sic]* and 18:22 hours as observed on surveillance camera at the intersection of Northside Dr Sw *[sic]* and Spellman Dr Sw. *[sic]* (video footage uploaded to evidence.com as evidence)" Furthermore, the Affidavit for Arrest avows

that "Note-Person of Interest of Interest [sic] as it pertains to the shooter and driver of the Infinity [sic] Vehicle- Mr. Ladavious McNair…is the registered owner of the 2018 Infinity [sic] QX50 Luxe Sport."

Det. Mustapha's sworn Affidavit is extensive evidence that he witnessed the suspect vehicle which was an **Infiniti Q60** initiate contact with the victim's vehicle on November 1, 2023. In spite of the alleged evidence seen by Det. Mustapha on the surveillance system, coupled with the evidence that established Mr. McNair as the registered owner of a **2018 Infiniti QX50 Luxe Sport**, Det. Mustapha committed the crimes of perjury in violation of O.C.G.A. § 16-10-70 and false swearing in violation of O.C.G.A. § 16-10-71, on September 20, 2024, when he knowingly and willfully made false statements to the Hon. Todd Ashley, Judge for the Fulton County Magistrate Court. (_See_ **attached Exhibit A – A.R. Mustapha Affidavit for Arrest**).

Most notably, on or about November 10, 2023, Det. Mustapha states "I retrieved a driver's license photo of the person of interest which I added onto a photo lineup which was administered under the microscope of my body worn camera. Unfortunately, the victim choose photo #6 which he claimed looked similar to that of the suspect." Det. Mustapha knew as early as approximately nine (9) days after the shooting incident that the victim was unable to identify Mr. McNair as the suspect who shot him on November 1, 2023. Det. Mustapha's use of the word "Unfortunately" when the victim failed to identify Mr. McNair as the suspect involved in the November 1, 2023, shooting illuminates the fact that Det. Mustapha was determined to pin the criminal acts at issue on Mr. McNair.

On November 11, 2023, Det. Mustapha made contact with Mr. McNair via his cell phone. During the call Mr. McNair informed Det. Mustapha that he was out of town on a pre-planned trip visiting his elderly grandfather in North Carolina and would be more than happy to speak to Det. Mustapha when he returned. Det. Mustapha agreed to permit Mr. McNair to call him back when he returned to Georgia. Immediately upon his return to Georgia, Mr. McNair called Det. Mustapha and during said call Det. Mustapha stated that he was out of town, and he would get back to Mr. McNair when he returned. Mr. McNair waited to hear back from Det. Mustapha and having heard nothing assumed that whatever issue Det. Mustapha was calling about had resolved itself. Had Det. Mustapha followed up with Mr. McNair, his investigation would have revealed that Mr. McNair was a graduate student at Clark Atlanta University working on his PhD in education and in class at the time of the alleged shooting, with numerous alibi witnesses, including but not limited to the professor who taught class on the day at issue. (_See_ **attached Exhibit B – Affidavit for Trevor Turner, PhD**). Moreover, truthful

The Mignott Law Group
Page 5 of 9

police detective work would have unearthed the fact that (1) Mr. McNair is not the registered owner of an Infiniti QX50; (2) Mr. McNair's vehicle was not involved in an accident; (3) Mr. McNair is a disabled veteran who had never been arrested prior to October 2, 2024; and/or (4) the only eyewitness, Albert Nalls the A-Tow truck driver witnessed an Infiniti G-35 on the night of the incident, not an Infiniti QX50 Luxe Sport and/or an Infiniti Q60 as alleged to have been seen on surveillance by Det. Mustapha. (*See* attached Exhibit C – Affidavit for Albert Nalls).

On November 22, 2023, Det. Mustapha obtained a search warrant for the Verizon Wireless phone records for Mr. McNair. On January 16, 2024, Det. Mustapha stated that he received "feedback from Verizon wireless…the CDR received would be forwarded to analysis to provide the end result which is to confirm that the suspect was in the area at the time of the incident." On January 24, 2024, Det. Mustapha claimed that "I received feedback on the analysis from Sgt. Maldonado. The result showed that 100% without a doubt that the person of interest/suspect was in the area at the time of the incident." Det. Mustapha failed to investigate whether or not Mr. McNair had official business in the area that would explain why his cell phone records would indicate presence in the "area."

On August 16, 2024, Det. Mustapha expressed in his Affidavit that "I received a text message from the victim advising of a photo that he had retrieved on Facebook that he believes was the person that shot him. When the victim was asked how he came about the suspects [sic] photo on Facebook over the phone, his response was, after he read the incident report, he took notice of the person of interest name on the report which was that of Mr. Ladavious McNair. Det. Mustapha's investigation was so reckless that he permitted the victim to secure a police report with the name of Mr. McNair.

On October 2, 2024, Mr. McNair was pulled over in a traffic stop by the Clayton County Police, arrested and transported to the Clayton County Jail. On October 2, 2024, Mr. McNair was picked up by Fulton County Police and transported to the Fulton County Jail at 901 Rice St NW, Atlanta, GA 30318. On or about October 5, 2024, Mr. McNair was denied bond. Subsequent to the first appearance court hearing, the victim (i.e. William Clint Latham) called the Fulton County District Attorney's Office and told them that he did not believe that Mr. McNair was the person who shot him on November 1, 2023. On October 7, 2024 undersigned counsel was retained. On October 8, 2024, an Emergency Motion for Bond was filed on behalf of Mr. McNair. Undersigned counsel met with Aimee Maxwell, Chief Senior Assistant District Attorney for the Fulton County District Attorney's Office. During said conversation, Chief ADA Maxwell stated that she would look into the matter and get back to undersigned counsel, to no avail. Following the

meeting with ADA Maxwell and on the same day, undersigned counsel went to the courtroom of Judge Emily Richardson, who was appointed duty judge at the time. Undersigned counsel pleaded with the court to hear the matter because an innocent man's Fourth Amendment Rights were being violated. However, Judge Richardson was dismissive and expressed that Mr. McNair already had a first appearance and no emergency hearing would be held regarding same.

After failing to appeal to Judge Richardson using the United States Constitutional Rights of Mr. McNair, undersigned counsel went to the courtroom where Magistrate Judge Brandy Brooks was conducting first appearance hearings and met with John Turner, Deputy District Attorney for the Fulton County District Attorney's Office. During said meeting undersigned counsel pleaded with ADA Turner for a consent bond; in that, Mr. McNair had an alibi which could easily be proven. Notwithstanding, ADA Turner was condescending and adamant that the District Attorney's Office would not consent to a bond, despite the expression that an innocent man was in custody and being held without bond. ADA Turner expressed that he took the stance he did because Det. Mustapha had sworn out a warrant upon which the District Attorney's Office will rely. In an attempt to assure that Mr. McNair was not killed at the Fulton County Rice Street Jail, undersigned counsel attempted to secure an emergency hearing before Judge Brandy Brooks, however, Judge Brooks was immovable; in that, Judge Brooks took the position that the duty judge (i.e. Judge Emily Richardson) was charged with the responsibility of hearing emergency motions such as the one filed on behalf of Mr. McNair. Once all efforts were futile on October 8, 2024, undersigned counsel was left with no option but to console Mr. McNair and assure him that as previously scheduled he would have his day in court on October 28, 2024 during his Preliminary Hearing.

On October 24, 2024, the Fulton County District Attorney to wit: Fani Willis executed an Indictment from the falsely sworn charges brought against Mr. McNair by Det. Mustapha. (***See*** attached **Exhibit D – Indictment**). On October 28, 2024, counsel for Mr. McNair appeared with the eyewitness A-Tow tow truck driver, Mr. Nalls, who was ready to testify that the description of the vehicle he provided to Det. Mustapha did not match the vehicle belonging to Mr. McNair. However, upon the arrival of witnesses, family members, and friends, ADA John Turner who was present in the courtroom expressed to undersigned counsel that there would be no hearing because Mr. McNair was Indicted by a Grand Jury on October 24, 2024. In response undersigned counsel expressed that rushing an Indictment on an innocent man was egregious. Hence in response to the ambushed Indictment a Demand for Speedy Trial was filed on Mr. McNair's behalf. (***See*** attached **Exhibit E – Demand for Speedy Trial**). On the same day (i.e. October 28, 2024),  WSBTV Channel 2 featured Mr. McNair's story. On October 29,

2024, the victim called the office of undersigned counsel and stated that he watched the television coverage of Mr. McNair's story and called the District Attorney's Office and left a message reiterating what he has said on numerous prior occasions that Mr. McNair does not fit the description of the person who shot him. During said call the victim expressed that he could not get the District Attorney's Office and or Det. Mustapha to listen to him; therefore, he had no other option but to call counsel for Mr. McNair. On October 29, 2024 support staff for the Hon. Kimberly M. Esmond Adams, Fulton County Superior Court Judge sent an email with notice that Mr. McNair's case was set for a Pretrial on Friday, November 1, 2024 and Jury Trial on Monday, November 4, 2024. On November 1, 2024, realizing that the malicious prosecution efforts would be exposed at trial, the Fulton County District Attorney filed a Motion for Nolle Pros of the Indictment, which was granted by Judge Adams. (**_See_ attached Exhibit F – Motion to Nolle Pros; See also Exhibit G - Order for Nolle Pros**).

Pursuant to the evidence gathered on behalf of Mr. McNair, the victim states that the entire time he has been telling Det. Mustapha that he was not certain who shot him. Most important is the victim's statement that when he shared with Det. Mustapha that the suspect had a low short haircut, Det. Mustapha stated, "his hair grew back." Det. Mustapha's flagrant conduct of encouraging a victim to misidentify an innocent man resulted in irreparable harm to Mr. McNair, including but not limited to post traumatic stress and nightmares directly connected to his in-custody experiences in the Fulton County Jail at 901 Rice St NW, Atlanta, GA 30318. Det. Mustapha's actions violated Mr. McNair's rights under the Fourth Amendment of the United States Constitution.

## B.    THE WARRANT'S MATERIAL EXCULPATORY OMISSIONS AND FALSE INCUPLATORY FACTS WHICH CAUSED INJURY

Mr. McNair has several causes of action under which his claims may proceed, including but not limited to malicious prosecution, intentional infliction of emotional distress, false imprisonment, etc.

a.    **Malicious Prosecution**

Because Det. Mustapha did not have probable cause to believe that Ladavious McNair was the suspect involved in the November 1, 2023, shooting, which was evidenced by the eyewitness vehicle description, the victim's inability to identify Mr. McNair as the shooter, the fact that Det. Mustapha sworn Affidavit states that he witnessed on video surveillance an **Infiniti Q60** make contact with the victims vehicle on November 1, 2023, Det. Mustapha committed the crimes of perjury in violation of O.C.G.A. § 16-10-70

and false swearing in violation of O.C.G.A. § 16-10-71, on September 20, 2024, when he knowingly and willfully made false statements to the Hon. Todd Ashley, Judge for the Fulton County Magistrate Court.

Before a warrant can initiate valid legal process, a magistrate must be provided with all material facts relevant to probable cause. While Det. Mustapha provided inculpatory facts that, in isolation, may have amounted to probable cause, he did not disclose other facts showing that his theory of Mr. McNair's guilt was not viable. Where an officer fails to disclose known and readily available wholly exculpatory facts and a warrant issues, legal process is constitutionally infirm. The United States Court of Appeals for the Eleventh Circuit has held that arguable probable cause is not enough to defeat a claim that a malicious prosecution plaintiff was subjected to more than a brief period of detention based on constitutionally infirm legal process. Therefore, the law is well settled that Mr. McNair's thirty-day detention is not justified based on arguable probable cause.

b.     **False Imprisonment**

Det. Mustapha had a duty to act as a reasonable officer would under similar circumstances- to refrain from executing a false Affidavit for Arrest of Mr. McNair. Det. Mustapha breached that duty by presenting false inculpatory facts to Judge Todd Ashley. As a result of that breach, Det. Mustapha actually and proximately caused injury including but not limited to malicious prosecution, intentional infliction of emotional distress, false imprisonment, etc., to Mr. McNair a disabled Army Veteran who served his country honorably and who is a productive contributor to the community.

The Atlanta Police Department's failure to properly train its employees in the proper manner to investigate crimes within the city evidences a deliberate indifference to the rights of the inhabitants of Atlanta. The city has been on notice of the need for further and improved training on proper investigations, and/or providing truthful sworn testimony to Magistrate Judges, and that deficiency is highlight by a recent pattern of unjustified malicious prosecutions of citizens. (e.g Sylvester v. Fulton Cty. Jail, 94 F.4th 1324 (11th Cir. 2024).

c.     **Intentional Infliction of Emotional Distress**

On a claim for intentional infliction of emotional distress, the plaintiff must produce evidence to establish all of the following elements: (1) the conduct must be intentional

or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe. To qualify as sufficiently extreme and outrageous, the conduct at issue must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Standard v. Falstad, 334 Ga. App. 444, 779 S.E.2d 682 (2015).

Mr. McNair has established all of the elements to show that (1) Det. Mustapha's conduct was intentional or reckless; (2) Det. Mustapha's conduct of telling the victim that Mr. McNair's hair grew back when the victim stated that Mr. McNair's hair did not look like the suspect; (3) Mr. McNair has suffered emotional distress directly related to the thirty days he remained in custody at the Fulton County Jail in violation of his Fourth Amendment Constitutional Rights; and (4) Mr. McNair's emotional distress is so severe that he suffers nightmares and is currently in treatment for same.

Please accept this letter as a formal request to recover the full value of Mr. McNair's loss, including but not limited to the claims asserted above, amongst other elements of damages to be proven at trial by jury. Pursuant to O.C.G.A. § 51-12-14, please accept this as a demand in the amount of 30 million ($30,000,000.00) dollars, plus reasonable attorneys' fees. Please be advised that pursuant to O.C.G.A. § 36-33-5, you must consider and act upon this request within 30 days of its receipt.

Thank you for your prompt attention in this matter. Should you have any further questions or if you would like to discuss this matter further, please do not hesitate to call my office.

Neither this letter nor the facts contained herein are evidence and are made for the purpose of settling a disputed claim. I look forward to hearing from you.

Sincerely,
**THE MIGNOTT LAW GROUP, LLC**

Marsha W. Mignott, Esq.

MWM/sb

Enclosure(s)

# CRIMINAL WARRANT

**Warrant No:**  EW-0456271

MAGISTRATE COURT OF FULTON COUNTY
GEORGIA, FULTON COUNTY



**EXHIBIT**

**A**

## AFFIDAVIT FOR ARREST

### (Ga. Code Ann. 17-4-45)

Personally came <u>A R Mustapha</u> , who on oath says that to the best of his/her knowledge and belief <u>Ladavious McNair</u> (hereinafter called the accused) between <u>11/01/2023</u> at <u>06:25 PM</u> and <u>11/01/2023</u> at <u>10:00 PM</u> , at <u>603 Metropolitan Pkwy SW, Atlanta</u> in <u>FULTON</u> county aforesaid, did commit the offense of <u>Aggravated Assault - Felony</u> (Count #1) , <u>16-5-21</u> in that <u>The said accused, Mr. Ladavious McNair did make an assault upon the victim, Mr. William Latham with an Object, a handgun which when used offensively against a person is likely to result in serious bodily injury which is what almost occurred in this situation. The accused, Mr. Ladavious McNair retrieved a firearm that was in his possession and hit the victim, Mr. William Latham in the head while he the accused, Mr. Ladavious McNair was standing in the middle of the roadway in front of the victim at the time.</u> said and this deponent makes this affidavit that a warrant may issue for his/her arrest.

**Probable Cause :**
Officer Johnson Primary Police Report of the Incident
On November 1, 2023 at 1832hrs, I Ofc DJ Johnson unit 3303, was dispatched to a person shot call at 603 Metropolitan Pkwy SW. Upon arrival, I observed a white male sitting in the drivers side of a white Chevy work van (GA tag ▓▓▓▓▓ with an apparent gunshot wound to his left knee. I was unable to get any information from the victim as Grady unit 776 was loading him up for transport. Ofc Nguyen unit 3311, trailed Grady to the hospital where he was able to identify the victim as William Clint Latham (DOB ▓▓▓▓▓▓) before he went in for emergency surgery. There was a witness on scene who identified himself as Albert Nalls an A-Tow driver (DOB ▓▓▓▓▓▓▓ ▓▓▓▓) who stated he seen the entire incident. Mr. Nalls advised that he was at the red light on Metropolitan Pkwy traveling south behind the white van, when he seen the victim exit his vehicle to show the suspect potential damage that may have occurred in a traffic accident between the two. Seconds later, Nalls stated the suspect punched the victim and as he stumbled, he reached in to his waistband and shot him before fleeing back to his vehicle speeding further south down Metropolitan.
   Mr. Nalls described the suspect as a slim black male standing approximately 5'10 - 6'1 in height with a low hair cut wearing a black hoodie and dark jeans and driving a silver sedan possibly an infinity or geneses. He also advised that A-Tow have front dash cameras that may have captured the incident however his supervisor would have to email the footage tomorrow. Where majorly the blood splatter appeared, my Supervisor Sgt Houston unit 3394, pointed out a deep scuff mark along the van drivers side front corner bumper that possibly was sustained in a side swipe collision. Mr. Nalls advised of only hearing one shot and was unable to identify the type of gun nor color. Multiple units searched for potential shell casings but was unable to locate any.
   A white male who identified himself as Slater Eckert (▓▓▓▓▓▓▓▓) was also present on scene, advising that he did not witness the incident only arriving minutes later, but stated that he works for Creative MultiCare Inc. which is the same company the victim work for. Mr. Eckert stated that he personally do Not know the victim since they work in separate departments of the company, but he is sure the Van have cameras along the perimeters. He provided his manager name Mr. Russell and contact number ▓▓▓▓▓▓ who will be able to access that camera footage along the van.
   Detectives Rodriguez 4720, Blume 4716, and Sgt. Hill 4706 with the aggravated assault unit, all arrived on scene to asses and gather information from myself and other units working the scene as well as the witness. Additionally, ID unit 7314 Foster arrived on scene for processing. Ofc Watson and Ofc Bush with the crime suppression unit 2358, spoke with the manager of Slim and Husky in regards to a camera that may have captured the incident in which a supplement report will be attached. Ofc Bush advised that she checked the flock camera system for the suspect vehicle and was able to identify a vehicle of interest that matched the description at the intersection of Metropolitan Pkwy and University Ave approximately 1-2 minutes after the 911 call came up. The vehicle of interest will be attached to this report and the owner of that vehicle shows to a Mr. Ladavious McNair (DOB ▓▓▓▓▓▓▓▓▓). Per Agg Assault request, the victim van was transported to the annex by South Metro to be held as evidence, nothing further.


Detective Mustapha's Case Note
On 11-02-2023 I reviewed the case file pertaining to the victim. Contact would be made with the victim, Mr. William Clint Latham to obtain further information on the incident.
Note- On 11-01-2023, The victim's vehicle, a white 2023 Chevrolet Express Van was removed from the scene by South Metro Towing and transported to Atlanta Police Property, the Annex building where it was held as evidence till a search warrant was obtained to retrieve the necessary evidential video footage. As advised, the van the victim was driving was equipped with a video recording system around it parameters that may or may not have captured the primary incident. The initial contact with the victim and the suspect started with the motor vehicle accident then followed, along with the secondary incident which followed suit about a mile down the road south on Northside Dr towards Metropolitan pkwy when the victim was struck in the head with a handgun and then, a single gunshot fired at the victim.
With that been said, I would request for a search warrant to make entry inside the vehicle that was driven by the victim. The main reason for the search warrant is for me to make entry inside the victim's vehicle so that I can retrieve

of the video footage from the vehicle may contain potential evidence that may aide me with my Investigation. On 11-3-2023, a search warrant was obtained and signed by a Fulton County Judge. I later relocated to 3493 Donald Lee Hollowell Pkwy and administered the search warrant on the vehicle. The victim's manger, Mr. Russell attempted to remotely retrieve the video footage from the vehicle for about forty-five minutes or more but was having some problems. Mr. Russell stated that he was having some technical difficulties in retrieving or seeing any video footage remotely from the surveillance camera, which is of concern because normally, once the ignition to the vehicle was activated, they were able to automatically retrieve and upload the video footage if any available from the vehicle. Mr. Russell later brought to my attention that the surveillance system inside the vehicle was equipped with a storage device, a scan disk which was inserted in to the well of the surveillance system attached to the vehicle. As a good faith, Mr. Russell advised me on how to retrieve the scan disk from the equipment which I did and later handed it over to him for video retrieval. The vehicle was released and towed away from the location by South Metro Towing to their impound lot. Unfortunately, it was brought to my attention that no video footage was available on the scan disk and that the calibration may have been faulty at the time.
Contact was made with the victim, Mr. William on cell # ▮▮▮▮▮▮▮. The victim advised that he has to undergo another surgery due to him not feeling his left feet. The victim advised that he sustained a bullet wound injury to the left ankle which was causing serious medical problems to his left leg.
The victim reported that on the said day of the incident, he was traveling South on Northside Dr Sw in the right lane when suddenly, the suspect who was also traveling the same direction in the left lane sideswiped his vehicle on the front left bumper as he the victim, was proceeding to make the left turn onto Northside Dr Sw. The victim advised that he was not sure if the suspect realized that the lane, he was traveling on at the time was a turning lane that continued on to Northside dr and as a result of, failed to maintain his lane of travel by going straight on to Chapel St Sw. The victim advised that he pulled over somewhere of on Northside dr Sw, checked his vehicle and noticed the minor scuff damage to the front left end of the bumper and proceeded to continue traveling South on Northside Dr Sw on the left lane. The victim advised that he was stopped at the traffic light at RDA and Metropolitan Pkwy in the left lane waiting for the traffic signal to change when suddenly, he saw the accused making contact with him to the front right passenger side to his vehicle. The victim advised that the accused stated to him that you crashed into my vehicle, and he replied to the accused by saying " you crashed into my vehicle you side swiped my vehicle when you failed to maintain your lane of travel." The victim advised that he got out his vehicle and walked to the front end of his vehicle where he made contact with the accused. The victim advised that the suspect at some point in time became agitated and furious and without been provoked, retrieved a handgun from his pocket and hit him in the head with the handgun. The victim further went on to say that the suspect then proceeded by firing a single gunshot at his left knee which caused the bullet to travel on a straight path down his left leg and the bullet eventually exited out his ankle. Note, Statement provided by the victim, Mr. William, as it relates to the shooting incident coincides with that of the surveillance video footage that was provided by the A-Tow driver, Mr. Albert whom at the time, had just pulled up few seconds before behind the victim's vehicle in the right turning lane and had witnessed the shooting when it occurred. The shooting as noticeable on A-Tow surveillance system occurred exactly at 18:23:24s.
Note- Officer Bush with the zone3 Fit Team unit had brought to my attention of a possible vehicle that she had located while reviewing the multiple surveillance systems within the area before and after the shooting incident and was successful in locating a gray Infinity Q50s sedan that matched the description of the suspect's vehicle. The vehicle in question was located on the Fuses system traveling east bound on University Ave from Metropolitan Pkwy minutes later after the shooting occurred. (Image of the suspect's vehicle as observed on the Fuses camera was attached to mark43 on the initial report)
On 11-08-2023, I relocated to the incident location area and checked for all the possible surveillance camera and LPR's system in the area that may or may not have captured the incident as well as the suspect's vehicle which was described by the victim as a gray or silver four door sedan, possibly, an Infinity or a Genesis. Locations of interest that I noticed was at Spellman Dr Sw at Northside Dr Sw and also, at Shelton Ave Sw. I reviewed the surveillance system, and I was successful in locating the initial contact of the incident between the victim's vehicle, (a white Chevrolet Express Van) and the suspect's vehicle, (a silver/gray Infinity Q60). The incident as noticed occurred on 11-01-2023 between the time frame of 1819 and 18:22 hours as observed on surveillance camera at the intersection of Northside Dr Sw and Spellman Dr Sw. (video footage uploaded on to evidence .com as evidence)


PTZ surveillance camera view of suspect's vehicle

• At 18:20:52s, the suspect's vehicle appeared on surveillance system on Spellman's Dr at Northside Dr going towards Chapel St Sw at an angle showing that suspect's vehicle definitely may have sideswiped the victim's vehicle.
• At 18:20:53s, the victim's vehicle clearly appeared on surveillance system, and it showed the victim may have tried to avoid the collision with the suspects vehicle by going wide far right. The victim's vehicle proceeded to travel south on Northside DR Sw.
• Between the time frame of 18:20:56s and 18:22:08s, the suspect's vehicle did an abrupt stop on the right - left lane at Chapel St Sw as noticeable by the brake lights on the rear of the vehicle, made a wide U-turn on to the left North bound lane to Chapel St Sw, waited for the traffic light to change on the north bound lane on Chapel St Sw, moved recklessly from the left lane on Chapel St Sw on to the right lane and made a right turn on to Northside Dr Sw and proceeded by traveling south on Northside Dr Sw towards the direction of travel oof the victim.


PTZ surveillance video footage of the suspects vehicle after the shooting incident

• Between the time frame of 18:23:25s and 18:24:02s, the suspect's vehicle, a gray infinity sedan was observed traveling South bound on Metropolitan Pkwy on the left lane and suddenly, changed over to the right lane. as he passed a red sedan vehicle.

18:24:23s.

On 11-08-2023, I relocated to Grady hospital and met with the victim, Mr. William. The victim appeared to be in stable and in good condition but was in tremendous pain. The victim advised that he undergone a second surgery on his left leg and his healing process would take some time as advised by his physician. The victim advised that he may be able to identify the suspect if a photo of the accused was presented to him in a photo lineup.

Note- Person of Interest of Interest as it pertains to the shooter and driver of the Infinity Vehicle- Mr. Ladavious McNair, DOB-████████    Mr. McNair is the registered owner of the 2018 Infinity QX50 Luxe Sport.

On 11-10-2023, I retrieved a driver's license photo of the person of interest which I added on to a photo lineup that I created. I relocated to the victim's place of residence, and he was presented with a photo lineup which was administered under the microscope of my body worn camera. Unfortunately, the victim choose photo #6 which he claimed looked similar to that of the suspect.

Note-The victim was adamant that the suspect head according to his memories, resembles that of the  "Peanut Head shape".

On 11-11-2023, I relocated to the person of interest, Mr. McNair's residence address on file to see if I can locate the said vehicle in question, a gray Infinity Qx50s but unfortunately, I was unsuccessful in seeing the vehicle at the location.

Later on, during the day, contact was made with the person of interest, Mr. McNair. Mr. McNair advised that he was out of town visiting family. The person of Interest, Mr. McNair called back to notify me that he was back in town. I advised Mr. McNair that I was investigating an incident, and he was a person of interest. I advised Mr. McNair that I would have to talk with him in person regarding such incident.

Contact was made with the eyewitness and A-Tow driver, Mr. Albert. Mr. Albert advised what he witnessed on the day of the incident. Mr. Albert advised that the suspect appeared to be a black male with low haircut, had on a blue sweatshirt, blue jeans and a white sneaker that looks like they were air force one type sneakers.

Note – The vehicle that Mr. Albert's was driving at the time, was his work vehicle, an A-Tow Ford tow truck which was equipped with a surveillance camera round the front end of the windshield captured the incident before and after the shooting.

11-22-2023- I did some research on the person of interest; Mr. McNair contact info and I noticed that the Person of Interest cell number was attached to Verizon Cellphone Company. I would be obtaining a Search Warrant on the person of interest cell contact information so that I can forward to Verizon Cellphone to retrieve the Call Detail Records on Mr. McNair. My Main reason in obtaining the Call Detail Records on Mr. McNair is to see if I can pinpoint him at the incident location or within close proximity.

• A search Warrant would be requested on cell #████████

On 11-22-2023, a Search Warrant was obtained and forwarded to Verizon Wireless for further processing.

On 1-16-2024, I received feedback from Verizon wireless as it pertained to the request that I placed forward to them requesting for the cellular phone records of Mr. McNair. The CDR received would be forwarded to analysis to provide the end result which is to confirm that the suspect was in the area at the time of the incident.

On 01-24-2024, I received feedback on the analysis from Sgt Maldonado. The result showed that 100% without a doubt that the person of interest/suspect was in the area at the time of the incident. The result would be saved on file as evidence.

On 08-16-2024, I received a text message from the victim advising of a photo that he had retrieved on Facebook that he believes was the person that shot him. When the victim was asked how he came about the suspects photo on Facebook over the phone, his response was, after he read the incident report, he took notice of the person of interest name on the report which was that of Mr. Ladavious McNair. The victim advised that out of curiosity, he decided to look on Facebook to see who the name comes back on file. The victim advised that when he did the name search of Ladavious McNair on Facebook, the profile photo that came up was that of the individual that shot him on the day of the incident. The victim advised that he was  since day one of the incident that the person that shot him, "head looks and resembles that of a peanut head shape".  The victim advised that he was in shock when he discovered the photo on Facebook. The victim advised that he immediately took a screen shot of the suspects photo and forwarded it to me. This suspects photo sent to me through text message would be saved on file as evidentiary item.

Important update- After I spoke with the victim on the said day of 08-16-2024 after he provided me with the person of interest/suspects photo, I checked on the suspects DMV license record on file approximately at 16:54:27 s and upon doing do, I noticed that the current driver's license photo of Mr. McNair was not the same photo that I had retrieved form the accused driver's license record on 11-09-2023 that I presented to the victim for a photo lineup. The current DMV photo of Mr. Ladavious McNair appeared to have been an updated photo and showed a license renewal date on file of 01-16-2024 compared to the previous driver license photo that showed an exam date of 10-14-2021. The suspects current DMV license photo shows Mr. McNair having his hair braided in a corn row fashionable style which presents his facial image distinctively as that of a "peanut head shape".

With this updated information, I advised the victim that he would be presented with another photo lineup in due time to see if he can identify the suspect amongst the photo presented to him.

On 09-14-2024, I relocated to the victim's place of residence, and he was presented with a photo lineup for him to select the suspect from amongst the photos presented to him. The victim positively identified photo #5, Ladavious McNair, as that of the person that shot him on the said day of the incident.

Note - The victim sustained permanent nerve damage to his left leg as a result of the injury that he sustained. Gruesome photos of the victims injury would be uploaded on to file as evidence

With the turn of events, Arrest warrants would be taken out on the accused, Mr. Ladavious McNair on the charge of Aggravated Assault (2counts) with a deadly weapon handgun and also, with Aggravated Battery.

Sworn to and subscribed before me,

Prosecutor/Affiant:   A R Mustapha

Title   Officer

Agency:   Atlanta PD

Badge No.:   6470

Phone No.:   404-546-0877 (w)

9/20/2024 11:50:31 AM

Deputy Clerk/Judge :   Todd Ashley

Title   Judge

Magistrate Court COURT OF FULTON COUNTY

9/20/2024 11:50:45 AM

# EXHIBIT B

January 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 779938136781

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Mailroom |
| Signed for by: | L.WILLINGHAM | Delivery Location: | 55 TRINITY AVE SW |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday;<br>Direct Signature Required | | ATLANTA, GA, 30303 |
| | | Delivery date: | Nov 14, 2024 10:22 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 779938136781 | Ship Date: | Nov 13, 2024 |
| | | Weight: | 1.0 LB/0.45 KG |

Recipient:
Doug Shipman, Council President, Atlanta City Hall
55 Trinity Avenue S.W.
ATLANTA, GA, US, 30303

Shipper:
The Mignott Law Group, LLC, The Mignott Law Group LLC
4945 Presidents Way
Tucker, GA, US, 30084



Thank you for choosing FedEx

**FedEx**

January 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 779938745348

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Mailroom |
| Signed for by: | D.JOHNSON | Delivery Location: | 141 PRYOR STREET SW |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday; Direct Signature Required | | ATLANTA, GA, 30303 |
| | | Delivery date: | Nov 14, 2024 10:04 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 779938745348 | Ship Date: | Nov 13, 2024 |
| | | Weight: | 1.0 LB/0.45 KG |

**Recipient:**
Darin Schierbaum Chief of Police, Atlanta Police Department
226 Peachtree Street SW
ATLANTA, GA, US, 30303

**Shipper:**
The Mignott Law Group, LLC, The Mignott Law Group LLC
4945 Presidents Way
Tucker, GA, US, 30084



Thank you for choosing FedEx

**FedEx**

January 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 779937849615

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Mailroom |
| Signed for by: | L.WILLINGHAM | Delivery Location: | 55 TRINITY AVE SW |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday; Direct Signature Required | | ATLANTA, GA, 30303 |
| | | Delivery date: | Nov 14, 2024 10:22 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 779937849615 | Ship Date: | Nov 13, 2024 |
| | | Weight: | 1.0 LB/0.45 KG |

**Recipient:**
Andre Dickens Mayor City of Atlanta, Atlanta City Hall
55 Trinity Ave S.W.
ATLANTA, GA, US, 30303

**Shipper:**
The Mignott Law Group, LLC, The Mignott Law Group LLC
4945 Presidents Way
Tucker, GA, US, 30084



Thank you for choosing FedEx

# EXHIBIT C

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | |
| | ) | CASE NO.:   24SC005420 |
| v. | ) | |
| | ) | |
| LADAVIOUS DASHAWN MCNAIR | ) | |
| | ) | |
| Defendant. | ) | |

<u>**AFFIDAVIT OF ALBERT NALLS**</u>

I, ALBERT NALLS, hereby state as follows:

1.  I am over the age of eighteen (18), competent to provide this Affidavit, and do so freely and voluntarily.

2.  I am the only eyewitness of the above-style action.

3.  On November 1, 2023, I witnessed a road rage incident that occurred on Metropolitan Pkwy SW, Atlanta in FULTON County.

4.  I was driving the A-Tow Ford tow truck at the time of the incident. I was at the red light on Metropolitan Pkwy SW, Atlanta in FULTON County while I was behind a white Chevrolet van.

5.  While waiting at the light, I saw a white male and a black male who appear to be arguing outside their vehicles. I saw the white male put up his hands in the air and then the black male pulled out a gun and shot the white male, before fleeing back to his vehicle and speeding off in a silver Infiniti G35.

6.  The suspect appeared to be a slim black male wearing a dark hoodie and dark jeans standing approximately 5' 10" to 6' 1" in height with a low hair cut that looked like a buzz cut.

7.  I heard only one shot, and I am unable to identify the type of gun or color of the gun.

8.  I communicated the above information to Officer DJ Johnson, unit 3303 on scene of the incident on November 1, 2023.

9.  On or about November 11, 2023, I spoke with Detective A. R. Mustapha, I told him that I had witnessed the entire incident and that the suspect appeared to be a black male with a low haircut, wearing a dark hoodie and dark jeans, driving a silver Infiniti G35.

10.  On or about October 28, 2024, I saw the news and the mugshot photograph of Mr. Ladavious McNair, and I am certain that he does not look like the person who shot the victim on November 1, 2023.

11.  I have told the police including but not limited to Officer Johnson and Detective Mustapha, more than once that the suspect had short hair that looked like a buzz cut and that the suspect was driving an silver Infiniti.

12.  I am executing this affidavit on my own free will and I have not been coerced by anyone to give this affidavit.

I declare under penalty of perjury under the laws of the State of Georgia that the forgoing is true and correct to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NOT.**

ALBERT NALLS          DATED
Sworn to and subscribed before me,

This ___ day of _N o d_ , 2024.

Notary Public
My Commission expires: _October 6, 2025_

# EXHIBIT D

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | | |
|---|---|---|---|
| **STATE OF GEORGIA** | ) | | |
| | ) | **CASE NO.:** | **24PI007339** |
| **v.** | ) | | **EW-0456271** |
| | ) | | **EW-0456272** |
| **LADAVIOUS DASHAWN MCNAIR** | ) | | **EW-0456273** |
| | ) | SO# | **P01147177** |
| Defendant. | ) | | |

### AFFIDAVIT OF TREVOR TURNER, PHD

I, TREVOR TURNER, PhD, hereby state as follows:

1. I am over the age of eighteen (18), competent to provide this Affidavit, and do so freely and voluntarily.

2. I am a retired professor formerly employed with Clark Atlanta University in November 2023.

3. On November 1, 2023, I was the professor assigned to teach CHED 790 Quantitative Research in the Clark Atlanta University's Fall Semester of 2023.

4. The CHED 790 course was instructed both virtually via Zoom and face-to-face in the computer lab of Clement Hall at Clark Atlanta University campus located at 223 James P Brawley Dr SW, Atlanta, GA 30314.

5. Mr. Ladavious DaShawn McNair was a PhD candidate who was enrolled in my CHED 790 Quantitative Research course Fall Semester of 2023.

6. I submit this affidavit to confirm that Mr. Ladavious DaShawn McNair was present in the computer lab and attended my November 1, 2023, class face-to-face from 4:00 p.m. to 6:30 p.m.

7. I know Mr. McNair to be a peaceful person, and I have never seen him act in a violent manner towards any other student during the time that he has been enrolled at Clark Atlanta University.

I declare under penalty of perjury under the laws of the State of Georgia that the forgoing is true and correct to the best of my knowledge and belief.

Further affiant sayeth not.

_____    10/21/2
TREVOR TURNER                      DATED

Sworn to and subscribed before me,

This 21ST day of OCTOBER, 2024.

_____
Notary Public
My Commission expires: OCTOBER 6, 2025

# EXHIBIT E

*NF*
*EJ16-Adams*

# INDICTMENT

24PI007339

**Fulton County Superior Court**
**\*\*FILED\*\* ET**
**Date: 10/24/2024**
**Che Alexander, Clerk of Court**

**Clerk No.** *24SC005420*

## FULTON SUPERIOR COURT

THE STATE OF GEORGIA

V.

**LADAVIOUS DASHAWN MCNAIR**
**DA #: 24DA10227**

| 1 | **AGGRAVATED BATTERY O.C.G.A. §16-5-24** |
|---|---|
| 2 | **AGGRAVATED ASSAULT O.C.G.A. §16-5-21** |
| 3 | **AGGRAVATED ASSAULT O.C.G.A. §16-5-21** |
| 4 | **POSSESSION OF FIREARM DURING COMMISSION OF A FELONY O.C.G.A. §16-11-106** |

*TRUE* BILL

*Oct. 24*, 20 *24*

*William K. Tiller*
Grand Jury Foreperson

PERSONID: 9445332

**FANI T. WILLIS, District Attorney**

| The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. |
|---|---|---|
| Defendant | Defendant | Defendant |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |
| Assistant District Attorney | Assistant District Attorney | Assistant District Attorney |
| This ____ day of _____, ____ | This ____ day of _____, ____ | This ____ day of _____, ____ |

# STATE OF GEORGIA, COUNTY OF FULTON

# IN THE SUPERIOR COURT OF SAID COUNTY

**THE GRAND JURORS,** selected, chosen and sworn for the County of Fulton, to wit:

| | |
|---|---|
| 1. WILLIAM K. TILLER, JR., Foreperson | 14. DOMINIC KERPER |
| 2. LUKE LEONARD., Asst. FP | 15. BETTY ANN KINNEY |
| 3. JOSLYN JACKSON, Secretary | 16. SANDRA LAMBERT |
| 4. LILLIAN PERRI, Asst. Sec. | 17. ALLISON LEONARDO |
| 5. INGRID BAKER | 18. NATHAN MILLER |
| 6. HAYWARD L. BENTON | 19. TIMOTHY NUGENT |
| 7. ANTOIN CAESAR | 20. KEISHA SHAW |
| 8. ELAINE CEKIS | 21. WENPIN TZENG |
| 9. JOSEPH CLARK-KAZICW | 22 JUSTIN VINES |
| 10. LAWRENCE FOX | 23. MARTIN WOLFE |
| 11. MOLLY HEACOCK | 24. MICHAEL HIGHTOWER JR. |
| 12. CLAUDE GILBERT JEAN-BAPTISTE | 25. CHANG LEE |
| 13. DAVID JOHNSON | 26. CANDACE PERRY |

in the name and behalf of the citizens of Georgia, do charge and accuse **LADAVIOUS DASHAWN MCNAIR** with the offense of **AGGRAVATED BATTERY O.C.G.A. §16-5-24,** for the said accused, in the County of Fulton and State of Georgia, on the **1st day of November, 2023, did maliciously cause bodily harm to William Latham by rendering his left foot useless; accused having accomplished this act by shooting William Latham in the left leg; -** contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 2 of 4

and the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **LADAVIOUS DASHAWN MCNAIR** with the offense of **AGGRAVATED ASSAULT O.C.G.A. §16-5-21,** for the said accused, in the County of Fulton and State of Georgia, on the **1st day of November, 2023, did unlawfully commit an assault upon the person of William Latham by shooting at, toward, and in the direction of William Latham with a handgun, the same being a deadly weapon; -** contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 3 of 4

and the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **LADAVIOUS DASHAWN MCNAIR** with the offense of **AGGRAVATED ASSAULT O.C.G.A. §16-5-21,** for the said accused, in the County of Fulton and State of Georgia, on the **1st day of November, 2023, did unlawfully commit an assault upon the person of William Latham by striking William Latham in the head with a handgun, an object which, when used offensively against a person, is likely to result in serious bodily injury; -** contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 4 of 4

and the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **LADAVIOUS DASHAWN MCNAIR** with the offense of **POSSESSION OF FIREARM DURING COMMISSION OF A FELONY O.C.G.A. §16-11-106,** for the said accused, in the County of Fulton and State of Georgia, on the **1st day of November, 2023, did unlawfully have on and within arm's reach of accused's person a handgun, a firearm, during the commission of a felony against and involving the person of another, to wit: Aggravated Battery and Aggravated Assault;** - contrary to the laws of said State, the good order, peace and dignity thereof.

**FANI T. WILLIS, District Attorney**

**Related Clerk No**: **24PI007339**

Complaint #: 233051447

| Defendant | DA # | Booking | Race | Sex | Birthdate | OTN | Agency |
|---|---|---|---|---|---|---|---|
| MCNAIR, LADAVIOUS DASHAWN | ███ | ███ | Black | Male | ███ | ███ | Atlanta Police Department |

# WITNESS LIST

William Latham - victim

A.  MUSTAPHA - Atlanta Police Department 0670

# Charge History

| | | |
|---|---|---|
| Name: | **MCNAIR, LADAVIOUS DASHAWN** | DOB:  |
| Gender: | **Male** | Race:  **Black** |
| Person ID: | | |
| DA Case | | |

### Arrest Charges

| Arrest Date | Count | Statute | Offense | OTN | Status | Decision | Case # |
|---|---|---|---|---|---|---|---|
| 10/04/2024 | 1 | 16-5-21 | Aggravated Assault | | Charging Instrument Generated | Charge | 24PI007339 |
| 10/04/2024 | 2 | 16-5-21 | Aggravated Assault | | Charging Instrument Generated | Charge | 24PI007339 |
| 10/04/2024 | 3 | 16-5-24 | Aggravated Battery | | Charging Instrument Generated | Charge | 24PI007339 |
| Not arrested on this charge | 4 | 16-11-106 | POSSESSION OF FIREARM OR KNIFE DURING COMMISSION OF OR ATTEMPT TO COMMIT CERTAIN FELONIES | | Charging Instrument Generated | Charge | |

### Prosecutor Charges

| Arrest Date | Count | Statute | Offense | OTN | Status | Decision | Case # |
|---|---|---|---|---|---|---|---|
| 10/04/2024 | 1 | 16-5-21 | Aggravated Assault | | Charging Instrument Generated | Charge | 24PI007339 |
| 10/04/2024 | 2 | 16-5-21 | Aggravated Assault | | Charging Instrument Generated | Charge | 24PI007339 |
| 10/04/2024 | 3 | 16-5-24 | Aggravated Battery | | Charging Instrument Generated | Charge | 24PI007339 |
| Not arrested on this charge | 4 | 16-11-106 | POSSESSION OF FIREARM OR KNIFE DURING COMMISSION OF OR ATTEMPT TO COMMIT CERTAIN FELONIES | | Charging Instrument Generated | Charge | |

# EXHIBIT F

Good afternoon Mr. Latham,

Please see attached affidavit for your execution. Please print, sign before a notary, and email to
lawyers@mignottlaw.com.

Thanks,
*Shermaine Blake*
Paralegal to Marsha W. Mignott, Esq.
**THE MIGNOTT LAW GROUP, LLC**
4945 Presidents Way
Tucker, Georgia 30084
(770) 621-5499 Office
(770) 621-5496 Fax
*Please reply to this email at*  lawyers@mignottlaw.com

This e-mail message and its attachments are attorney-privileged and confidential information intended for the sole use of the individual or entity named above.  If the recipient of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify this author immediately by return e-mail and delete or destroy the original message in all media.  Thank you for compliance and your consideration.



---

**From:** Clint Latham ███████████████
**Sent:** Tuesday, October 29, 2024 5:53 PM
**To:** lawyers@mignottlaw.com
**Subject:** Fwd: Clint Latham

---------- Forwarded message ---------
From: **Clint Latham** ████████████████████
Date: Tue, Oct 29, 2024 at 5:44 PM
Subject: Clint Latham
To: <lawers@mignottlaw.com>

I would like to make sure everyone knows that every since oct 5 I have stated that I was not sure if Mr McNair was the shooter and I would like to remove my part of the line up removed if anyone has anymore questions for me please feel free to contact me and for any harm I have caused by not being sure I am terribly sorry I don't want no one in jail if they didn't do it

# EXHIBIT G

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | |
| | ) | |
| v. | ) | INDICTMENT NO. 24SC005420 |
| | ) | JUDGE ADAMS |
| LADAVIOUS DASHAWN MCNAIR, | ) | |
| Defendant. | ) | |

### MOTION FOR *NOLLE PROSEQUI*

Comes now the State of Georgia, by and through in, pursuant to O.C.G.A § 17-8-3, moves this Honorable Court for consent to *nolle prosequi* in the above captioned file number.  In support of this motion, the State sets forth the following:

1. That Defendant was indicted in the above captioned case number on October 24, 2024. This incident occurred on November 1, 2023.

2. This incident stems from a road rage incident that occurred at 603 Metropolitan Parkway S.W. Atlanta, GA 30310.  After a minor vehicle collision with another vehicle, the Victim subsequently got out of his vehicle and a verbal argument occurred with the driver ("the shooter") of the other vehicle. During a verbal argument between the two individuals, the Victim was hit in the head with a gun and then shot in the knee by the shooter. The bullet traveled down the Victim's leg and shattered his ankle. As a result of being shot, the Victim has permanent injuries to his leg.

3. Responding Officers from the Atlanta Police Department were given a description of the shooter and his vehicle. Officers were able to locate a vehicle that matched the description using the Fuses system. That vehicle was traveling eastbound on University Ave. near its intersection with Metropolitan Pkwy. approximately 2 minutes after the shooting. That vehicle, an Infinity Q50 (GA #YIL658) is registered to the Defendant. The Victim was shown a photo-lineup on November 10, 2023, with the Defendant's 2021 driver's license photo amongst the six photos provided in the lineup, but ultimately did not choose the Defendant's photo. Call Detail Records belonging to the Defendant were requested through a search warrant and the records show that he was utilizing a phone tower that would service 603 Metropolitan Pkwy.

4. While in possession of the police report, the Victim saw the Defendant's name in the report and searched on the internet where he observed a Facebook photo of the Defendant. The Victim then contacted the Atlanta Police Department on August 16, 2024 and notified the Detective that the Defendant in the Facebook photo was the shooter. The Detective noticed that the Defendant's hair on the driver's license

photo from 2021 and the recent Facebook photo provided by the Victim appeared to be styled differently. On September 14, 2024, the Defendant was presented with another photo-lineup, with one of the photos consisting of the Defendant's driver's license photo from January 2024. The Victim subsequently picked the Defendant out of the photo line-up and warrants were issued. The Defendant was arrested on October 4, 2024.

5. On October 18, 2024, an email was sent by an Assistant District Attorney ("ADA") assigned to the case to Defense Counsel requesting a call back to discuss the case. The ADA also followed up the email with a phone call to the Defense Counsel's office asking for a call back.

6. On October 22, 2024, the ADA called defense attorney again requesting a call back.

7. On October 24, 2024, this case was presented to the Grand Jury and a true bill was obtained.

8. On October 28, 2024, Defense Counsel filed a speedy trial and on October 29, 2024, the Judge set the case for trial on November 4, 2024.

9. On October 30, 2024, the Victim was interviewed by members of the District Attorney's office and told them that he was no longer able to say with certainty that he correctly identified the Defendant. The Victim indicated that he mentioned this to Defense Counsel the previous day.

10. Despite the State being able to place the Defendant's phone and his vehicle in the area of the shooting, the State no longer believes that it can prove its case beyond a reasonable doubt due the change in the Victim's certainty of his identification of the Defendant as the shooter.

11. For the reasons stated above, the District Attorney's hereby requests the Court to enter an order granting this motion to *nolle prosequi* this case with prejudice.

THIS the 1st day of November 2024.

> */s/ Gautam Rao*
> Gautam Rao
> Deputy District Attorney
> Fulton County District Attorney's Office
> 136 Pryor Street Atlanta, GA. 30303
>
> Fani T. Willis
> District Attorney
> Fulton County District Attorney's Office
> 136 Pryor Street Atlanta, GA. 30303

# EXHIBIT H

Fulton County Superior Court
***EFILED***NY
Date: 11/1/2024 1:37 PM
Che Alexander, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **STATE OF GEORGIA** ) | |
| ) | **INDICTMENT NO.** |
| **v.** ) | **24SC005420** |
| ) | |
| **LADAVIOUS DASHAWN MCNAIR** ) | |
| ————————————————— ) | |

### ORDER FOR NOLLE PROSEQUI

The above-referenced matter having come before this Court pursuant to a timely-filed Demand for Speedy Trial, upon the State's Motion to dismiss with prejudice, it is hereby **ORDERED** that this case shall be **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 1st day of November, 2024.

**HONORABLE KIMBERLY M. ESMOND ADAMS**
**SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**