**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LADAVIOUS DASHAWN MCNAIR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO: 1:25-cv-04980-AT |
| CITY OF ATLANTA, GEORGIA | ) | |
| a municipal corporation of the State of | ) | |
| Georgia, CHIEF DARIN SCHIERBAUM, | ) | |
| in his official and individual capacity, and | ) | **Jury Trial Demand** |
| ABDUL R. MUSTAPHA, in his official | ) | |
| and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES

**COME NOW**, Defendants City of Atlanta ( "City" ), Chief Darin Schierbaum ("Chief Schierbaum"), and Abdul R. Mustapha ("Defendant Mustapha") (collectively "Defendants") by and through undersigned counsel, and pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Complaint (Doc. 1).

## I.  STATEMENT OF FACTS

On November 1, 2023, Officer Demetrius Johnson was dispatched to an emergency call regarding a motorist who was shot in the street in the aftermath of a

1

motor vehicle collision.[1] Per the annexed Affidavit of Arrest, which references responding Officer Johnson's Primary Policy Report, an eyewitness named Albert Nalls ("Mr. Nalls") was interviewed regarding the incident and reported that the perpetrator drove a "silver sedan possibly an infinity or geneses".[2] Officer Johnson's report further provided that an inquiry into the "flock camera system" resulted in the identification of the vehicle that matched the witness' description registered to Plaintiff Ladavious McNair ("Plaintiff") as the owner in the immediate vicinity of the incident approximately one to two minutes after the 911 call was received.[3] Responding officers who investigated the scene and reviewed the flock system identified a vehicle registered to the Plaintiff as the vehicle of interest, not Defendant Mustapha.[4]

Notably, Defendant Mustapha's investigation of the matter began on November 2, 2023, a day after the subject incident.[5] Defendant Mustapha's investigation encompassed information received from Officer Johnson's investigation, including footage of Plaintiff's vehicle in the immediate vicinity of the incident approximately one to two minutes after the 911 call was received, in addition to Mr. Nalls eyewitness account that the perpetrator's vehicle was "a silver

---

[1] Doc. 1, ¶17.
[2] Doc. 1, pg. 43 of 69, Exhibit A - Affidavit for Arrest.
[3] *Id.*
[4] *Id.*
[5] *Id.*

sedan possibly an infinity or geneses".[6] Moreover, Defendant Mustapha's Affidavit for Arrest indicates that he received data from Verizon Wireless pursuant to a search warrant which conclusively placed Plaintiff in the area at the time of the incident.[7] Lastly, although Mr. William Clint Latham ("victim") was unable to positively identify Plaintiff in the initial photo lineup which was based on an outdated DMV photo, the victim positively identified the Plaintiff as the person who shot him when shown a second photo lineup, that contained an updated photo of the Plaintiff on September 14, 2024.[8]

The Affidavit of Arrest of the Plaintiff was signed by Defendant Mustapha and reviewed by Fulton County Magistrate Circuit Court Judge Todd Ashley on September 20, 2024.[9] Thereafter, Plaintiff was arrested pursuant to said Affidavit of Arrest on October 2, 2024.[10]

Following Plaintiff's arrest, on October 5, 2024, the victim allegedly contacted the prosecuting attorney and Defendant Mustapha to recant his prior identification of the Plaintiff as the perpetrator.[11] Additionally, subsequent to Plaintiff's arrest, eyewitness Mr. Nalls provided an affidavit within the Plaintiff's

---

[6] *Id.*
[7] *Id.* at pg. 45 of 69, Exhibit A to Doc. 1.
[8] *Id.* at pg. 46 of 69, Exhibit A to Doc. 1.
[9] *Id.*
[10] Doc. 1, ¶ 49.
[11] Doc. 1, ¶¶ 52-54.

criminal matter, wherein Mr. Nalls modified his prior description of the perpetrator's vehicle from a "silver sedan possibly an infinity or geneses" to an "Infiniti G-35," and further attested that he did not believe Plaintiff was the perpetrator.[12]

## II.    <u>STANDARD OF REVIEW</u>

### *Failure to State a Claim*

The Rules of Civil Procedure provide a process for a defendant to move to dismiss a complaint on the ground that the plaintiff failed to state a claim on which relief may be granted. "A Rule 12 (b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[13] Therefore, in assessing the merit of a Rule 12 (b)(6) motion, the court must assume that all factual allegations set forth in the complaint are true.[14]

"However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."[15] Rather, a complaint must plead "factual content that allows the court to draw the reasonable inference

---

[12] *Complaint* at Exhibit "C".

[13] *Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009) (quoting Fed. R. Civ. P. 8 (a)(2)).

[14] *See* e.g., *United States v. Gaubet*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

[15] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

that the defendant is liable for the misconduct alleged."[16] Complaints in § 1983 cases must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.[17]

### III.   ARGUMENT AND CITATION OF AUTHORITY

### I.   THE CITY IS NOT LIABLE FOR DEFENDANT MUSTAPHA'S ACTIONS IN INVESTIGATING THE PLAINTIFF

In Count I Plaintiff attempts to assign liability to the City for Defendant Mustapha's performance of purported ministerial duties of investigating Plaintiff's involvement the underlying incident (the "Incident").[18] Plaintiff does not specify the theory under which the City's liability for Defendant Mustapha's actions would attach.[19]

One such theory may be that in Count I, Plaintiff is in effect asserting a claim against Defendant Mustapha in his official capacity. In that situation, the City would bear liability for Defendant Mustapha's improper performance of ostensibly ministerial duties ("Theory 1"), since suits against public employees in their official capacities "are in reality suits against the state.[20] Pursuant to O.C.G.A. § 36-33-1(a), "it is the public policy of the State of Georgia that there is no waiver of the sovereign

---

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[17] *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010).
[18] Doc.1, p.14.
[19] *Id.*
[20] *Cameron v. Lang,* 274 Ga. 122, 126 (2001).

immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages."[21] Therefore, the Georgia General Assembly exempts municipal corporations, such as the City, from liability for damages absent a waiver of sovereign immunity.[22] To the extent Plaintiff, in effect, attempts to assert a claim against the City for failure to properly carry out its ministerial function pursuant to O.C.G.A. § 36-33-1(b), the analysis has to focus on whether the allegedly faulty operation of the police department by the City is a ministerial function for which sovereign immunity is waived.[23]

"Governmental [as opposed to ministerial] functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality."[24] It is, therefore, well established in Georgia law, that "[t]he operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary *governmental function* of the municipality as opposed to a *ministerial*, proprietary, or administratively routine function."[25] Thus, claims against the City for improper performance of its governmental (as opposed to ministerial as Plaintiff asserts) duty

---

[21] O.C.G.A. § 36-33-1. Under subsection (b), municipal corporations could be liable for improper or unskillful performance of their ministerial duties.
[22] *Id.*at subsection (a).
[23] See O.C.G.A. § 36-33-1(b).
[24] *City of Atlanta v. Mitcham,* 296 Ga. 576, 581 (2015).
[25] *Carter v. Glenn*, 249 Ga. App 414, 416 (2001) (emphasis added).

in operating a Police Department are barred by sovereign immunity[26] and Count I against the City should be dismissed under that (Theory 1) theory.

Another theory ("Theory 2") pursuant to which the City's liability to Plaintiff may conceivably attach - assuming *arguendo*, Defendant Mustapha improperly performed his duties, and assuming those duties were in fact ministerial - is through negligent hiring, training and supervision of Defendant Mustapha. In *City of Atlanta v. Durham*, the Georgia Court of Appeals held that the City was entitled to dismissal of the negligent hiring and supervision claims against it because "activities that are undertaken primarily for public benefit rather than for revenue production are governmental functions and the City is shielded from negligence claims by sovereign or governmental immunity."[27] The Court further held that:

> "[E]mployment decisions, including the retention, hiring and supervision of employees, necessarily requires consideration of numerous factors and the exercise of deliberation and judgment. They are therefore precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."[28]

Under Theory 2, Plaintiff would have to have asserted that the City was liable for the alleged improper conduct of Defendant Mustapha and that the City was

---

[26] *Mitcham,* 296 Ga. at 578. ("A municipal corporation is immune from liability for acts taken in the performance of its governmental functions.")
[27] *City of Atlanta v. Durham*, 324 Ga. App. 563, 565-66 (2013).
[28] *Id.*

negligent in hiring, training, and supervising Defendant Mustapha. If allowed to go forward, said claim would run afoul of the holding in *Durham* by holding a municipal defendant responsible for a personnel decision.[29] Under *Durham*, the City's personnel decisions are "governmental functions" "undertaken primarily for public benefit" and are therefore shielded by sovereign immunity.[30] Thus, Count I should be dismissed under Theory 2 as well.

## II. PLAINTIFF FAILS TO PLEAD A CLAIM OF MONELL LIABILITY AGAINST THE CITY

To impose liability on a municipality, a plaintiff must show: 1) that his constitutional rights were violated; 2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) that the policy or custom caused the violation.[31] As an initial matter, the Plaintiff cannot establish a plausible Monell liability claim against the City because the Plaintiff's constitutional rights were not violated given the ample evidence of probable cause provided in the subject Affidavit of Arrest. "An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under

---

[29] *Id.*

[30] *Id.*

[31] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[32]

The subject Affidavit of Arrest provides ample probable cause as: 1) Officer Johnson identified the Plaintiff as the owner of a vehicle matching multiple descriptions of the perpetrator's vehicle, 2) the victim identified the Plaintiff as the perpetrator though a photo lineup, and 3) cellular data confirmed Plaintiff's presence in the area at the time of the incident.[33] Plaintiff provides several examples of potentially exculpatory types of evidence that arose during the *subsequent* criminal proceedings, however, whether an investigation could have been done differently and whether Plaintiff was subsequently convicted bears zero relevance to the evaluation of the existence of probable cause supporting the applicable affidavit of arrest.[34] Probable cause preceded the Plaintiff's lawful arrest, and therefore the Plaintiff can never establish the first and third elements of Monell liability. Based on the foregoing, the Monell liability analysis should end here; however, in an abundance of caution, the City provides the following analysis to demonstrate that

---

[32] *Ruch v. McKenzie*, 2019 WL 1407012, at *5 (N.D. Ga. Mar. 28, 2019).

[33] Doc. 1 at Exhibit "A", Affidavit for Arrest.

[34] *See* Doc. 1, *generally.* Further note, Plaintiff's pleadings are misleading by failing to disclose that the Infiniti G-35 and Infiniti Q-60 are in fact the same car model given that Infiniti re-named the G-35 as the Q-60 in 2013. *See* https://www.infinitioftustin.com/g35-vs-q60.

the Plaintiff has also failed to plead a Monell claim against the City under the second element of Monell liability.

<u>*The Plaintiff Fails to Demonstrate an Official Policy, Practice or Custom theory of Monell Liability*</u>

This Court should dismiss the Monell claims against the City, because the Plaintiff cannot demonstrate that the City had an official policy, practice or custom that was the driving force behind the alleged constitutional violation in this case. Notably, "[a]s a municipality, the City cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers."[35] Instead, a municipality is liable under § 1983 and Monell only where it "had a policy, custom or practice that caused the deprivation" complained of.[36] Such liability may be established, among other ways, by showing that: (1) the municipality's legislative body enacted an official policy on point, (2) final policymakers for the municipality "have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure," or (3) someone with final policymaking authority adopts or ratifies the unconstitutional act or decision of a subordinate.[37]

      **a. The City's Municipal Legislative Body Has Not Enacted an Official Policy that Constituted Deliberate Indifference to the Plaintiff's Constitutional Rights.**

---

[35] *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).

[36] *Id.*

[37] *Id.*; *see also Rogers v. City of Atlanta*, 214 F. Supp. 3d 1314, 1317 (N.D. Ga. 2016).

As a preliminary matter, the Complaint is completely devoid of any allegation that the Atlanta City Council, which is the legislative body of the City, enacted an official policy that caused the deprivation the Plaintiff claims in this case. Instead, the Plaintiff alleges that the City maintained an "official policy, custom, and/or practice of providing false swearing(s) to secure arrest warrant(s) for citizens."[38] The Plaintiff cannot rely on a theory of *respondeat superior* to hold a municipality liable under § 1983.[39]

For a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice."[40] This threshold identification of a custom or policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."[41]

To maintain a plausible claim of Monell liability premised on official policy, the Plaintiff must establish that the City's policy was to train officers to provide false swearing(s) in order to improperly secure arrests.[42] The Plaintiff cannot infer a

---

[38] Doc. 1, at ¶ 113.

[39] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978) (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.")

[40] *McDowell v. Brown*, 492 F.3d 1283, 1290 (11th Cir. 2004).

[41] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997).

[42] *See McDowell*, generally at 1290.

policy merely because of some purported harm that resulted from his interaction with a government entity.[43] The "official policy" requirement of Monell was intended to distinguish acts of the municipality from acts of the municipality's employees and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible.[44] That is, acts which the municipality has officially sanctioned or ordered.[45] A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council).[46] The "touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of civil rights protected by the Constitution."[47]

Two issues undermine Plaintiff's Monell claim premised on official policy: 1) the Complaint is devoid of any allegation that the city council adopted any official policy to unlawfully arrest criminal suspects; 2) the Plaintiff was never deprived of his civil rights because his arrest was lawful as demonstrated above. Accordingly, Plaintiff's Monell claim premised on official policy fails.

### b. The Complaint Fails to Establish Municipal Liability against the City under a theory of "Impermissible Unofficial Custom and Practice".

---

[43] *See id*. at 1293.

[44] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986).

[45] *Pembaur*, 475 U.S. at 480.

[46] *See Monell*, 436 U.S. at 661, 694–95

[47] *Monell*, 436 U.S. at 690.

This Court should dismiss Count II of the Complaint because the Plaintiff fails to plausibly allege liability against the City under a theory that final policymakers acquiesced in a longstanding practice that constitutes the City's standard operating procedure.[48]

### i. Unofficial Municipal Custom

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law, or express municipal policy, is "so permanent and well settled as to constitute 'custom or usage' with the force of law."[49] "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."[50]

In the instant matter, the Plaintiff alleges that the City's final policymakers acquiesced in a longstanding, unofficial custom and practice of regarding training officers to provide false swearing(s) to secure arrest warrant(s).[51] However, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."[52] "Threadbare recitals of elements

---

[48] *See Hoefling*, 811 F.3d at 1279.
[49] *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).
[50] *Brown*, 923 F.2d at 1481.
[51] Doc. 1, ¶ 113.
[52] *Oxford Asset Mgmt., Ltd.,* 297 F.3d at 1188.

of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12 (b)(6) motion.[53] However, Plaintiff does not provide even a single example beyond his own experience in support of Plaintiff's assertion regarding a pattern of providing false attestations by officers.[54] Even a handful of other examples would not be sufficient as specific facts must be alleged detailing the widespread policy of custom.[55] Therefore, the Plaintiff's reliance on the same in an attempt to establish widespread policy or custom fails.

The Plaintiff asserts that the City and its officers routinely provide false attestations in order to improperly secure arrests.[56] The Plaintiff is attempting to conflate the officer's actions in this case with the City's, intimating *respondeat superior* liability. However, Monell claims cannot proceed under a *respondeat superior* theory: "[A] municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation."[57]

### ii. Unofficial Practice

---

[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[54] *See* Doc. 1, *generally.*
[55] *Watts v. City of Hollywood, Florida*, 146 F.Supp.3d 1254, 1272 (S.D. Fl. 2015) (finding that four examples of instances of improper access by City employees was not enough to satisfy the pleading standard on a Rule 12 (b)(6) motion to dismiss, as the plaintiff was required to allege specific facts detailing widespread policy or custom, not just a couple of incidents and a conclusory assertion).
[56] *Plaintiff's Complaint* at Count II.
[57] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) citing Monell, , 436 U.S. at 691.

To prove § 1983 liability against a municipality based on practice, a plaintiff must demonstrate that the municipality engaged in the persistent practice of unconstitutional deprivation.[58] However, as stated-above, plaintiffs must allege specific facts detailing widespread policy or custom, not just a couple of incidents and a conclusory assertion.[59] In *Watts*, four examples of similarly situated plaintiffs suffering the same violation was insufficient to plead the existence of a widespread policy or custom.[60] Plaintiff herein alleges only his own experience.[61] Plaintiff fails to allege any example of the alleged constitutional violation ever occurring before his purported circumstance, let alone within similarly situated circumstances.[62] Accordingly, the Plaintiff cannot plausibly plead a persistent practice of unconstitutional deprivation to establish an impermissible unofficial custom and practice theory of Monell liability, necessitating dismissal.[63]

### c. The Complaint Fails to Establish Municipal Liability against the City under a theory of Final Policymaker Ratification.

---

[58] *Monell*, 436 U.S. at 698.

[59] *Watts,* 146 F.Supp.3d at 1272.

[60] *Id.*

[61] Doc. 1, *generally*.

[62] *Id.*

[63] See *Joyce v. Crowder*, 509 F. App'x 969, 970 (11th Cir. 2013) (affirming the district court's dismissal of the plaintiff's claims under *Monell* because "there was no underlying constitutional violation"); *McDowell*, 392 F.3d at 1289 (stating that to allege a § 1983 claim against a city or county, a plaintiff must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation").

This Court should dismiss the Monell claim against the City, under the theory of Policymaker Ratification because the subject officers did not possess final authority to establish municipal liability and because their actions to arrest the Plaintiff was lawful. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal liability with respect to the action ordered."[64] The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.[65] Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.[66]

### i. Chief Schierbaum did not ratify any unconstitutional acts concerning the Plaintiff's arrest.

Plaintiff alleges that Chief Schierbaum is a final policymaker by virtue of appointment by the City's Mayor.[67] Plaintiff alleges that Chief Schierbaum ratified the alleged unconstitutional actions of the subject officer by allegedly having awareness of the practice of officers engaging in false swearings/attestations.[68]

---

[64] *Pembaur*, 475 U.S. at 481-83.
[65] *Pembaur*, 475 U.S. at 482.
[66] *Pembaur*, 475 U.S. at 483.
[67] Doc. 1, ¶ 97.
[68] Doc. 1, at ¶ 104.

However, Plaintiff's claim that Chief Schierbaum ratified unconstitutional actions of the subject officers in an attempt to establish a final policymaker ratification theory of municipal liability fails because the subject officer did not make any false swearing/attestation.

A municipal officer who is not a final policymaker may nevertheless bind the municipality through a single act when that official was delegated the authority to make the decision by a final policymaker.[69] "The mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review."[70] Ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."[71]

In the instant matter ratification did not transpire because the subject subordinate officers did not perform an unconstitutional action in executing Plaintiff's arrest warrant. As thoroughly discussed above, the subject subordinate officer had ample probable cause to substantiate said affidavit of arrest.[72]

---

[69] *Ratlieff v. City of Fort Lauderdale*, No. 22-CV-61029, 2023 WL 3750581, at *16 (S.D. Fla. June 1, 2023).
[70] *Mandal v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989).
[71] *Hoefling v. City of Miami*, 811 Fl3d 1271, 1279 (11th Cir. 2016).
[72] Doc. 1, at Exhibit "A", Affidavit for Arrest.

Accordingly, the Plaintiff's claim of municipal liability under a theory final policymaking ratification fails and should therefore be dismissed.

## III. THE CITY CANNOT BE HELD LIABLE FOR UNLAWFUL SEIZURE BECAUSE THE PLAINTIFF WAS LAWFULLY ARRESTED

This Court should dismiss Count III in its entirety because the Plaintiff was not unlawfully seized. As an initial matter, Plaintiff fails to plead the City or any City employee conducted any form of search or seizure given that Plaintiff admits in his Complaint that he was arrested by Clayton County Police and subsequently detained and prosecuted by Fulton County.[73] The Defendant's only involvement in Plaintiff's prosecution stem from Detective Mustapha's Affidavit of Arrest, which in and of itself is neither a search nor seizure.

Even if assuming *arguendo* the City was in some form considered the mechanism of Plaintiff's seizure, it is well established that an arrest with probable cause is a lawful seizure in regards to the Fourth Amendment.[74] Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures."[75] However, "[t]he existence of probable cause is an absolute bar to a claim

---

[73] Doc. 1, at ¶¶ 49-50.
[74] *Stewart v. City of Montgomery*, 2016 WL 1254606 (N.D. Ga. 2016) at *4 (citing *Brown v. City of Huntsville*, Ala. 608 F.3d 724, 734 (11th Cir. 2010)).
[75] *Skop v. City of Atlanta*, GA, 485 F.3d 1130, 1137 (11th Cir. 2007).

of unlawful arrest under . . . the Fourth or First Amendment."[76] "An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[77]

The Affidavit of Arrest, which is annexed to the Complaint, exhibits ample probable cause as: 1) Officer Johnson identified the Plaintiff as the owner of a vehicle matching multiple descriptions of the perpetrator's vehicle, 2) the victim identified Plaintiff as the perpetrator though a photo lineup, and 3) cellular data confirmed Plaintiff's presence in the area at the time of the incident.[78] Accordingly, the existence of probable cause in the underlying arrest is an absolute bar to the Plaintiff's unlawful seizure claim.

### i. Detective Mustapha is entitled to Qualified Immunity

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[79]

---

[76] *Ruch v. McKenzie*, 2019 WL 1407012, at *5 (N.D. Ga. Mar. 28, 2019) (citing *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.")).

[77] *Ruch*, 2019 WL 1407012, at *6 (citing *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016)).

[78] Doc. 1 at Exhibit "A", Affidavit for Arrest.

[79] *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002).

A defendant asserting a qualified immunity defense must first show that she was engaged in a "discretionary function" when she performed the complained-of act.[80] The burden then shifts to the plaintiff to show that the defendant is unentitled to qualified immunity.[81]

For the reasons stated above, Defendant Mustapha was engaged in a discretionary function when he prepared Plaintiff's Affidavit of Arrest. Although Plaintiff does not claim Defendant Mustapha ever arrested him, regardless, it is well established that whenever a police officer has probable cause to believe that a person is committing a particular public offense, an officer may lawfully arrest him.[82] Here, Defendant Mustapha's discretionary investigation uncovered ample probable cause as listed in the subject affidavit of arrest.[83] Plaintiff is unable to dispute that Defendant Mustapha was pursuing a job-related goal. Therefore, the conduct that Plaintiff complains of was discretionary and protected by qualified immunity.

## IV. PLAINTIFF FAILED TO SATISFY THE REQUIREMENTS FOR PLEADING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

---

[80] *Holloman v. Harland,* 370 F.3d 1252, 1263–64 (11th Cir. 2004).
[81] *Id.* at 1264.
[82] *See Willis v. Siegelman,* 307 F.Supp.2d 1236, 1241 (M.D.Ala.2004) (citing *Redd v. City of Enterprise,* 140 F.3d 1378, 1383 (11th Cir.1998)).
[83] *Complaint* at Exhibit "A", Affidavit for Arrest.

Qualified, or official immunity shields Defendant Mustapha from being sued for intentional infliction of emotional distress ("IIED").[84] The application of the doctrine of qualified immunity causes Defendant Mustapha to be immune from suit, in his personal capacity, for actions taken in connection with his investigation of Plaintiff's possible involvement in the road rage shooting on November 1, 2023.[85] The elements of a cause of action for IIED are: (1) intentional or reckless conduct; (2) conduct that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.[86]

Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for IIED is a question of law.[87] "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress".[88] Whether emotional distress is sufficient to sustain an IIED claim is a question for the Court.[89]

---

[84] *Conley v. Dawson*, 257 Ga. App. 665, 668 (2002).
[85] *See id.*
[86] *Renton v. Watson*, 319 Ga. App. 896, 903 (2013).
[87] *Id.*
[88] Ghodrati v. Stearns, 314 Ga. App. 321, 323 (2012).
[89] *Id.*

Here, the sole basis for Plaintiff's emotional distress is his detention at the Fulton County Jail.[90] While clearly less than pleasant, it ought not be deemed so severe that no reasonable man could be expected to endure it. The (non)outrageousness of Defendant Mustapha's conduct was addressed *supra* in the discussion of Plaintiff's claims in Count I and the lack of actual malice. The same rationale applies to the Defendant Mustapha in the IIED context. His conclusions are reasonable based on the undisputed evidence provided by Plaintiff within the four corners of his Complaint for Damages: 1) Plaintiff was identified by the victim,[91] 2) Plaintiff and his vehicle were identified on the Incident Report,[92] 3) and the Plaintiff's description  and vehicle were consistent with eyewitness' statements.[93] The link between the alleged conduct and the alleged distress is the required element of causation.[94] Here, this element is absent as any distress was not caused by Defendant Mustapha, whose job it is to detain suspects, but by people such as the Magistrate Judge, District Attorney, and operators and inmates of the Fulton County Jail. As such, the elements for pleading the IIED are not satisfied and Count IV should be dismissed.

---

[90] Doc. 1, ¶ 68.
[91] Doc. 1, ¶ 48.
[92] Exhibit A.
[93] Doc. 1, Exhibit C. (Infinity Q50 is a later version of Infinity G35 and the two are not easy to tell apart).
[94] *Renton*, 319 Ga. App. at 903

## V. COUNT V CLAIMS FOR FALSE IMPRISONMENT AND FALSE ARREST SHOULD BE DISMISSED AS INAPPLICABE.

"Where, as here, there has been an arrest pursuant to a warrant, the remedy depends on whether the accused was prosecuted. 'If after the arrest [,] the warrant is dismissed or not followed up, the remedy is for malicious arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the *exclusive remedy,* and an action for malicious arrest will not lie.'"[95] Here, it undisputed that Plaintiff was prosecuted.[96] Therefore, an action for malicious prosecution is Plaintiff's *exclusive remedy,* and Count V should be dismissed.

## VI. COUNT VI CLAIM FOR MALICIOUS PROSECUTION SHOULD BE DISMISSED AS DEFENDANTS HAD PROBABLE CAUSE.

"To successfully prosecute a tort claim for malicious prosecution, "a plaintiff must show that the defendant acted both without probable cause and maliciously."[97] Absent malice, no liability attaches to the officer's exercise of his lawful discretion even when the decision to arrest Plaintiff was allegedly flawed.[98] Here as discussed *supra*, Defendants had ample probable cause defeating malice. Without malice, Defendant Mustapha, whose investigative actions are classified as discretionary, is entitled to official immunity.[99] Claims for malicious prosecution against the City in

---

[95] *Stephens v. Zimmerman*, 333 Ga. App. 586, 590 (2015).
[96] Doc. 1, Exhibit E, Grand Jury Indictment.
[97] *Zimmerman*, 333 Ga. App. at 590.
[98] *Id*. at 593.
[99] *Id*.

the exercise of its governmental function of police powers are barred by municipal sovereign immunity.[100] Therefore, Count VI should be dismissed as to all Defendants.

## IV.     <u>CONCLUSION</u>

Based on the foregoing, Defendant City of Atlanta respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint for Damages and dismiss all of Plaintiff's claims against it in their entirety.

Respectfully submitted this 13th day of October 2025

**RESPECTFULLY SUBMITTED,**

**PATRISE PERKINS-HOOKER**
**City Attorney**
**Georgia Bar:**
**572358**
**(please direct all communications to the undersigned attorneys)**

*/s/ Robert Steinberg*
**ROBERT STEINBERG**
Senior Attorney IV
Georgia Bar No. 678110
(404) 379-5075 *Direct*
rsteinberg@atlantaga.gov

*/s/ Mohamad P. Nielsen*
**MOHAMAD P. NIELSEN**
**Assistant Attorney**
Georgia Bar No. 840177

---

[100] *Mitcham,* 296 Ga. at 578.

(470) 681-8121 *Direct*
PNielsen@atlantaga.gov

***Attorneys for Defendant***

**City of Atlanta Department of Law**
55 Trinity Avenue SW, Suite 5000
Atlanta, Georgia 30303
Office: 404-546-4100 (*main*)

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LADAVIOUS DASHAWN MCNAIR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO: 1:25-cv-04980-AT |
| CITY OF ATLANTA, GEORGIA | ) | |
| a municipal corporation of the State of | ) | |
| Georgia, CHIEF DARIN SCHIERBAUM | ) | |
| in his official and individual capacity, and | ) | **Jury Trial Demand** |
| ABDUL R. MUSTAPHA, in his official | ) | |
| and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that on this day ***CITY OF ATLANTA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES*** was electronically filed using this Court's filing system and all parties listed below were served electronically as follows:

Marsha W. Mignott, Esq.
**THE MIGNOTT LAW GROUP, LLC**
4945 Presidents Way
Tucker, Georgia 30084
Lawyers@mignottlaw.com

***Attorney for Plaintiff***

This 13th day of October, 2025.

RESPECTFULLY SUBMITTED,

*/s/ Robert Steinberg*
**ROBERT STEINBERG**
Senior Attorney IV
Georgia Bar No. 678110
(404) 379-5075 *Direct*
rsteinberg@atlantaga.gov

*/s/ Mohamad P. Nielsen*
**MOHAMAD P. NIELSEN**
**Assistant Attorney**
Georgia Bar No. 840177
(470) 681-8121 *Direct*
PNielsen@atlantaga.gov

***Attorneys for Defendant***

**City of Atlanta Department of Law**
55 Trinity Avenue SW, Suite 5000
Atlanta, Georgia 30303
Office: 404-546-4100 (*main*)